Hemiuiill, C. J.
There are two points presented by the record for consideration.
1st. Was the action barred by the laws of Florida?
2d. Was it barred by the laws of Texas?
The first arises from the pleadings and the facts as agreed upon by the parties, and the second is distinctly presented by the pleadings and the facts apparent on the notes themselves.
The effect of the limitation law of the territory of Florida upon the action was the only question discussed in the court below, and to which the attention of the court was alone directed; and we shall proceed to consider whether there was error in the judgment of the court below on that ground.
Statutes of limitation or prescription of actions are regarded by writers and authorities on international law as affecting the remedy and not the merits in controversies litigated before courts of justice.
From considerations of public policy nations generally have established within their respective territories some fixed period within which suits must be prosecuted before their tribunals, whether brought by foreigners or natives or on foreign or domestic claims or causes of action.
A foreigner cannot complain that he is compelled to institute suit at the time and under the circumstances prescribed for citizens, nor is the entire prohibition of suits by foreingers regarded as such a breach of international comity, as to constitute a just cause of offense to .other nations; nor can suitors, whether foreigners or citizens, insist that the times and modes of litigating suits which have been adopted by the nation, where the claim originated should supersede those of the country where the action is instituted. The validity, interpretation and obligation of contracts depend on the laws of the country where the contract originated, but the remedy for the enforcement of the contract is a matter of municipal regulation within the exclusive control of the sovereignty in whose forums the litigation is conducted, and whose regulations in relation to proceedings in suits must be complied with by all parties who have submitted to or been brought within the cognizance of her judicial tribunals. The defendant cannot, on the principles of international law, claim the protection of the limitation laws *(517) of Florida, as by Ms immigration to and residence in Texas, he voluntarily placed himself under the control of the laws of this country which are supreme and exclusive in relation to the times, modes and circumstances under which rights may be judicially controverted, and in relation to which foreign laws cannot be recognized except so far as they may be sanctioned by the laws of the country.
If statutes of limitation could in any just sense be regarded as forming a part of the contract, their operations should be admitted wherever the contract is litigated. But they are not so considered. In making contracts, the future time (if any) which is in the contemplation of the parties is the day of the maturity of the contract, and not that on which by lapse of time exemption may be claimed from its performance. A contrary doctrine would impute to the obligee a contemplated evasion of his obligation from the inception of his agreement, and would, in the language of Lord Brougham, turn a protection against laches into a premium for evasiveness. Story Confl. Laws, p. 4-S2.
These are the well established doctrines of international law. There are exceptions however to the general rule that the statutes of limitation or prescription of the place where the suit is brought must control the rights of the parties, but as they do not affect the question under consideration, we will not enter into their discussion. They are referred to by Mr. Justice Story in section 582 of his treatise on the conflict of laws.
By the 13th section of the statute of limitations, p. 166, 5 Laws, 1840-1S41, the legislature of Texas has advanced one step beyond these exceptions to the rules of international law, and declared “that no action shall bo brought against any emigrant of the republic to recover a claim which was barred by the laws of limitation of the state from which he emigrated. This provision was perhaps the ground on which the plea of the statute of limitations of a foreign territory was supposed to be maintainable. But giving the terms employed their natural and ordinary signification, we think the provision refers to cases where the right of action was barred before emigration, and not where the prescription had only commenced to run. We are of opinion, therefore, that on the principles of international jurisprudence and on the proper construction of the above statute regulation, the court below did not err in adjudging that the action was not precluded by the law of limitations of the territory of Florida.
2. Was the right of action barred by the laws of Texas?
• The record shows that the limitation or prescription of the laws of the land was pleaded as a peremptory bar or exception, but this plea *(518) does not appear to have been acted upon or to have entered into the consideration of the court in the rendition of its judgment; and it might be objected that it would not properly come within the cognizance of this tribunal exercising appellate jurisdiction.
This objection is sufficiently answered by the terms of the 24th section of the act to organize the supreme court, 1 State Laws, p. 256, which directs appeals to be tried on a statement of facts, or on a bill of exceptions to the opinion of the judge, or on a special verdict or an error in law, either assigned or apparent on the face of the record, The plea was not witdrawn or the rights claimed thereby renounced, and if on examination it be fully sustained by the laws of the land, and a judgment rendered in contravention of such plea be manifestly erroneous, the power of this court to refuse the correction of such error because the point had not attracted the attention of the lower court would be extremely questionable.
The dicisions of courts must conform to the laws of the land, whether that be presented by counsel in the primary or the appellate courts, or becomes otherwise manifest to the court.
In Watts et al. v. Waddell et al. 6 Pet. 402, it is said that no rule of court or principle of law prevents complainants from assuming a ground in the supreme court which was not suggested in the court below.
In Garland v. Davis, 4 How. 143, the powers and duties of the appellate court to examine into and correct errors apparent on the record, but not noticed in the court below or suggested by the counsel in the supreme court, were discussed at some length and several authorities cited.
It was held that where the whole record was before the court above, any exception appearing upon it can be taken by counsel which could have been taken below (16 Pet. 319), and that it was the duty of the court to give judgment on the whole record and not merely on the points stated by counsel. 6 Cranch, 221; 1 Gall. 257. In Patterson [7v. United States, 2 Wheat. 222, the points made were not considered by the court and judgment was pronounced on other grounds. I proceed now to the consideration of the plea.
In determining questions arising out of laws limiting actions, the courts in later decisions have departed from the rules of construction by which at an earlier period the positive provisions of such laws were frittered away and their beneficial ends in a great measure defeated. Prescriptive laws have at times been treated as if. they were contrary to natural equity, and as enriching one man by the loss of another. And under such or more modified views, but of the same character, it *(519) is not surprising that rights secured by such laws have been defeated on flimsy grounds in furtherance of what was supposed to be equity between the parties. But this is not the aspect in which such statutes should be regarded by the courts of justice. They are justly held “ as statutes of repose to quiet titles, to suppress frauds and to supply the deficiences of proof arising from the ambiguity, obscurity and antiquity of transactions. They proceed upon the presumption that claims are extinguished, or ought to be held extinguished, whenever they are not litigated in the proper forum at the prescribed period. They take away all solid ground of complaint, because they rest on the negligence or laches of the party himself; they quicken diligence by making it in some measure equivalent to right,” etc. Story Confl. p. 482.
Prescription by which an end is put at some time to litigation is founded upon the highest considerations of public policy and is eminently conducive to social order and public tranquillity — and was not without reason denominated by the Romans thq patroneo humanigen-eris et finis solioitu&innm — the patroness of the human race and the termination of all anxieties. Diccionario de Lelegislacion, p. 526.
Such laws should be regarded with favor by courts of justice, and receive such interpretation consistent with their terms as would defeat the mischief intended to be suppressed, and advance the policy and remedy they were dosigued to promote. Under such impressions of the beneficent purposes of such laws, and the spirit in which they should be expounded, I proceed to inquire into the provisions and principles of law. controling the questions arising upon the plea.
At the maturity of these notes we were governed by the laws of Spain on the subject of prescription, modified in some respect by statutory provisions not affecting the present question. These laws were swept off under the second section of the act of the 16th January, 2840, vol. 4, p. 1, repealing with some specific exceptions all laws in force on the first day of September, 1836. Uor was any law of limitation substituted in place of the one repealed until the succeeding congress, when the law of the 5th February, 1841, was adopted.
Among other matters, it was provided by the act that from and after its passage all actions of debt grounded upon any contract in writing shall be commenced and sued within four years next after the cause of such action, and not after. And by the 24th section of the act, it was declared that the second section of the act to adopt the common law, approved January twentieth', one thousand eight hundred and forty, which repealed the laws of limitation or prescription then in force, shall not be so construed as to revive any claims which had been barred *(520) by said laws, and all claims against which said laws had commenced to run shall be barred by the lapse of time which would have barred them, had those laws continued in force, provided, the said time be shorter than that by which they would have been barred by the other sections of this act.
To a determination of this question, it will be necessaay to consider what were the provisions of the Spanish laws of prescription on contracts of this character, and what effect is to be given them where the period of prescription had not run before the repeal of the law, and where the remainder of that period may be longer than the term fixed by the new law.
It was strongly urged that, by the commercial law of Mexico, actions on notes of hand and bills of exchange were prescribed by the lapse of four years, and we have held this and other similar cases under advisement that the authorities relied upon might be produced. We have been referred to the “code of commerce” of Spain, published in 1829, in which this term of prescription is established, but we have had no evidence that this system has been recognized by the governments of Mexico or of the state of Ooahuila and Texas as having the force and authority of law.
The appellant has also relied upon the provisions of the 29th sec. cap. 13, Ordenanzas de Bilbao, p. 101, as fixing substantially the same term of prescription as is established by the code of commerce.
This section of the Ordenanza, after declaring that the holder of a bill of exchange has an action against an acceptor, prescribes the measures to be taken by the holder to insure the responsibility of the drawer or indorser; and after such proceedings, he can then have his recourse against the said drawer and indorser at any time within the next four years, but not after. This provision prescribing four years is restricted to the action against the drawer and indorser of a bill of exchange, and can have no influence on the rights of the parties in this case. These must be determined by the general laws on the prescription of personal actions, and the latest of these is law 5, book 11, tit. 8 of the Recopilación Novissima, being the 63d of the laws of Toro. This law prescribes the executive action on a personal obligation within ten years, and the personal action or the action in the ordinaria, and the execution granted thereon within twenty years; and requires the said law to be observed, notwithstanding the law of the King Don Alonzo prescribed personal actions within ten years. The law of Don Alonzo is the 3d of the Ordenamiento real.
We do not propose to examine the law of Toro critically. It is not without obscurities in relation to the limitation of personal actions, *(521) but we shall adopt the construction placed on the law by the courts of Louisiana, when applied to contracts under private signatures, viz. r that actions on such contracts are prescribed by the lapse of ten years. This construction was founded upon the authority of Gomez, in whose comments upon the law of Toro it was stated that the law of Don Alonzo was not repealed by the law of Toro, so far.ns it related to private writings, and this authority was referred to by the courts in Goddard’s Heirs v. Urquhart, 6 La. 660.
The notes executed by the appellant would, on the above construction of the law, be barred in ten years from their maturity, had the prescription continued without interruption.
This was, however, not the case, as there were payments made on each of the notes before the repeal of the ancient law of prescription. That these payments were made was not questioned in the court below, and we will not, therefore, comment on the evidence by which the fact seems to have been established. Under the former laws, prescription was interrupted by a payment of part of the debt. In 1. 29, tit. 29, Partidas, 30, it is declared “ that if the debtor renews the obligation by executing an act, or giving security or pledge for it, or by paying something by way of damages, or as part of the debt, etc., the prescription will be thereby interrupted, and the time lost during which it had already run. On one of these notes the appellant continued to make payments up to 17th March, 1840, and a payment was made on the 11th of the same month, being five days before the repeal of the former law of prescription took effect. On the other note a payment was made on the 17th August, 1838, and prescription ran on this note one yeai’" and seven months before the introduction of the common law.
The question in relation to the latter note is, whether the appellant on equitable principles is entitled to the benefit of the time which had been acquired before the repeal of the laws of prescription.
The adoption of the statute of limitation, though nearly one year after the repeal of the former laws of prescription, would not deprive the appellant of the benefit of the time which had already run against the action, if he would have been entitled to claim such right, had the subsequent law been adopted eo instanti with the repeal of the former. The courts of Louisiana have held, in similar questions, that the time which elapsed under the old law was to be computed according to that law, and that which follows according to the new law, in the proportion that each time bears to the term required by the old and by the new laws. 6 La. p 674; 11 id. p. 60. By that mode of computation, one year and seven months having elapsed from the *(522) payment on the note to the repeal of the old law, or about one-sixth of the time necessary to prescribe, three years and four months would be required to complete the prescription under the new law. The suit was not so commenced until nearly four years after the passage of the statute of limitations, and eight months beyond the time necessary to complete.the prescription, and consequently the action, if brought on that noté alone, cannot be maintained. But the payment of the other note of the date of the 11th March, 1840, leaves but five days of the former prescription before the repeal of the law.
These would have been sufficient under the term of the new statute to have barred the suit, but' when computed with reference to the former term, there would be two or three days wanting to complete the full term of four years from the date of the act.
It becomes necessary to determine whether the space of time intervening between the old and new law is to be rejected from or included in the computation of time necessary to bar an action, the cause of which had accrued before the passage of the law.
In the first section of the statute of limitations, p. 163, Laws of 1841, it is declared that “ all actions of debt grounded upon any contract in writing shall be commenced and sued within four years next after the cause of such action or suit, and not after.”
The terms employed here are very explicit and easily understood. The mandate of the law is emphatic that suits must be brought within four years after the cause of action, and not after, and is applicable indiscriminately to all causes of action, whether accruing before or subsequent to the passage of the statute. The obvious meaning of the language is, that the computation of the prescription shall commence from the inception of the right of action, but if this construction were enforced in all cases, it would in some operate as bar before the passage of the act, and so far would be unconstitutional, and would to a certain extent be inconsistent with the provisions of the eighth section, which authorize suits on demands for money due five, ten and fifteen years. It was also supposed to be incompatible with the provisions of the 24th section, directing claims to be barred by the lapse of time, which would have barred them uuder the former laws of proscription, provided the time would be shorter than that by which they would have been barred under the other sections of the act.
There are certainly grave objections arising from constitutional considerations, and by inference from the provisions of the 8th section against the application of the provision of the first section in its literal meaning, as a general rule to all causes of action arising previously to the enactment of the law, and in consequence of these, *(523) and from a prevailing impression that to permit any portion of the time which had elapsed before the passage of the act to constitute a part of the term of prescription under the new law would be retrospective, the statute has been generally so construed as to require the limitation to commence running from the date of the law, on all previous causes of action coming within the purview of the first section. This construction operates with great harshness on all claims which had been matured for some time previous to the statute. If the right of action had accrued more than four years, the defendatt derives no advantage from the lapsed portion of time, and the claim is* not barred a day earlier than if it had arisen at the date of the act. And, what is still more unequal, if matured more than one day over five years it would be barred under the eighth section in one year, whereas, if one day under five years.it would remain in full uninterrupted force and vitality for the next four years. This is an inequality as glaring and as unreasonable as any which could arise from any other construction of the statute.
We have seen, however, from adjudicated cases in Louisiana based on principles which had already been determined by the court of cas-sation in France, that it is but equitable on the substitution of a new term of prescription, to allow the party the benefit of the time which had elapsed under the former law.
A still more expanded principle of equity was asserted by the supreme court of the United States in the case of Ross et al. v. Duval et al. 13 Pet. 64, as decisive of the effect to be given to the portion of the term of prescription, which has elapsed before the passage of a law of limitation.
The opinion bears internal evidence of being formed on mature deliberation, and the point was announced as one regarded as important by the court, and the rule laid down in the language of the opinion is, that “it is a sound principle, that where a statute of limitation prescribes the time within which suit shall be brought, or an act done, and a part of the time has elapsed, effect may be given to the act and the ti me yet to run, being a reasonable part of' the whole time, will be considered the limitation in the mind of the legislature in such cases.’’
It was further stated that the rule was believed to be founded on principle and authority, though there might be some seemingly contradictory decisions on the point in some of the states which have been influenced by local considerations and the peculiar language or policy of certain acts of limitation.
If this be correct doctrine — and it is certainly based on natural *(524) eqnitj — it applies with peculiar force to this case, where the lapse of five more days would have completed the full period of four years from the dafce of the act in 1841.
The term of prescription in the case before the supreme court of the United States was ten years —seven of'which had run before the passage of the law, and the three remaining years were considered by the court as a reasonable part of the whole time, and as the limitation intended by the legislature.
The considerations of policy on which the statute of 1841 was founded would also justify the application to this case of the above principle of construction, but being objectionable for the want of sufficient certainty, and believing as we do, that by an equitable construction of the provisions of the 24th section, we are authorized to regard the time elapsing previous to the act of 1841 as a portion of the ancient term of prescription, we shall adopt, in relation to this as well as on the other note, the rules of computation established by the decisions in Louisiana. The 24th section in express terms recognizes the ancient law of prescription as influencing to a certain extent, rights of action, and requires that the whole time previous to the statute of 1841, as well before the repeal of the old law as during the intervening space between the new and the old law, to be computed as a part of the former term of prescription, if, by this inclusion of the whole antecedent period, the claim would be barred sooner than by the provisions of the new law.
This space of time being allowed to be computed as a part' of the old term of prescription, for the purpose of interposing an earlier bar to the prosecution of actions, and it being only from constitutional considerations and equitable principles of construction, that we can compute the prescription on causes of action within the purview of the first section from any other point than that of their accrual, whether they arise before or after the act, we are of opinion that the application of the principles of the cases cited from Louisiana would, while not conflicting with the constitution, harmonize the various provisions of the statute, produce fewer inequalities and be more consonant to the principles of natural reason and justice than any other construction which could be adopted.
The time intervening between the 10th March, 1840, and the 5th February, 1841, would be about one-tenth of the former period of prescription, equal to four months of the new term. The action when instituted had been barred four months less five days when the suit was instituted, and must, therefore, on the principles of the above construction, be dismissed.
*(525) We do not intend to express any dissent to tbe doctrine advanced in the case from 13 Peters — we think it sound and equitable in cases to which it is applicable, but where the ancient and new term of prescription can be brought in juxta-position by an equitable construction not conflicting with the provisions of the law, the rule in the cases from Louisiana is to be preferred, as being at once consistent with equity and applicable to all cases without a violation of the constitution.
It is ordered, adjudged and decreed that the judgment of the court below be reversed, and the court here proceeding to render such judgment as the court below should have entered, it is ordered, adj udged and decreed that the cause be dismissed.