PATRICK H. HAYS vs. EDWARD CAGE, USE, ETC.— Writ of Error from Robertson County.

It is not error to permit security for costs to be given *at any time* before a case is *actually dismissed* for want of the security, under a rule requiring it.

The reinstatement of a cause, after it has been dismissed for the want of prosecution, is a matter within the discretion of the court below which this court will not revise.

An emigrant to Texas cannot defend himself, under the provisions of the 13th section of our statute of limitations of 1841, by the plea of the statute of limitations of the country from whence he emigrated and in which the claim sued upon originated, unless it be shown that an action upon the claim "was barred" by the statute of that country previous to his emigration.

The principle that when a statute of limitations has commenced to run it will continue to run, notwithstanding intervening impediments, is only applicable when invoked in the country where the statute exists. It has no force when urged in the courts of a foreign country where the statute itself has not the authority of law.

A foreign judgment, *not satisfied*, constitutes no bar to a suit brought upon the original cause of action or evidence of indebtedness.

The possession of a note or bill of exchange by the payee is evidence of ownership, although the same may appear to have been indorsed by him in blank by writing his name across the back of it. [*Ante*, 397.]

A party is not bound by an admission which operates to his prejudice, if it were made under the authority of a judicial decision which has since been overruled.

(443)

[502] The defendant in error sued the plaintiff in error in 1844 on a promissory note made at Manchester, in the state of Mississippi, for the payment of several thousand dollars due on the 1st day of January, 1838.

The defendant pleaded the statute of limitations of the state of Mississippi of six years, and a former recovery in that state upon the same cause of action.

He also pleaded the limitation prescribed by the 1st section of the act of limitations of this state. 5 Statute, 1841, p. 163.

To the plea of the statute of limitations of the state of Mississippi, the plaintiff replied that the defendant emigrated from that state before the right of action had become barred by the laws thereof.

To this replication the defendant excepted, but his exception was overruled by the court.

To the plea of a former recovery the plaintiff excepted, and his exceptions were sustained.

It appears from the record that the plaintiff was ruled to give security for costs, but the minutes of that term do not show who was the security given.

At a subsequent term a motion was made to strike the case from the docket for that cause, but the motion was refused and the security was permitted to be then given.

It further appears that the case was dismissed for the want of prosecution at the spring term of 1847, and subsequently at the same term reinstated on the motion of the plaintiff; but it does not appear for what cause.

From the statement of facts and a bill of exceptions in the record, it appears that when the note sued on was offered in evidence, it appeared to have been indorsed in blank by having the name of the payee written across it, which, however, had been subsequently stricken out. The defendant's counsel asked the judge to charge the jury, that " if it appears on the back of the note sued on that the note was or has been transferred by payee, the plaintiff in this case, and the [503] jury believe that to be the fact, the plaintiff had no right to bring the suit; and in that case they would be bound to find for the defendant, unless the plaintiff produced evidence to show that

the said note and the interest thereon had been transferred to said plaintiff." But the court refused the instruction, and at the instance of the plaintiff instructed the jury that "the possession of the note sued on by the original payee, with his name in blank on the back of the note stricken out, is *prima facie* evidence of his ownership and right to sue."

The defendant removed from Mississippi to Texas in 1840.

In his statement of the facts the judge says that the defendant "admitted that the statute of limitations of four years of this state did not bar the plaintiff's right to recover."

There was a verdict and judgment for the plaintiff, and the defendant prosecuted this writ of error.

*Taylor*, for plaintiff in error.

*Gillespie*, for defendant in error.

Mr. Justice WHEELER, after stating the facts, delivered the opinion of the court, Mr. Justice LIPSCOMB not sitting.

For the plaintiff in error it is insisted that the court erred:

1st. In overruling the defendant's motion to strike the case from the docket for the want of a compliance with the rule requiring security for costs.

2d. In reinstating the cause after it had been dismissed for the want of prosecution "without any legal ground shown" therefor.

3d. In overruling the defendant's exception to the plaintiff's replication to the defendant's plea of the act of limitations of the state of Mississippi.

4th. In sustaining the plaintiff's exceptions to the defendant's plea of a former recovery by the plaintiff below against the defendant in the state of Mississippi. And

[504] 5th. In refusing the instructions to the jury asked by the defendant and in giving those asked by the plaintiff.

1. The first alleged error was in effect the subject of consideration at the last term of this court in the cases of Houston v. Roberts, and Cook v. Beasley; [1] in the latter of which we expressed the opinion that the security ought not to be refused if proffered at any time before the actual dismissal of

---

[1] 1 Tex. 523, 591.

the cause, and we see no reason to be dissatisfied with the opinion then expressed. But in the case before us there seems to have been a compliance with the rule at the term when it was made, but the clerk having omitted to enter the fact properly of record, the court permitted the defect to be supplied and the security to be again given at the next succeeding term, and in this we are of opinion there was no error.

2. The second ground assigned for the reversal of the judgment assumes that after the dismissal of the cause for the want of prosecution, it was reinstated "without any legal ground shown" therefor. It does not so appear from the record. That, indeed, is silent as to the grounds upon which the case was reinstated, but in the absence of anything appearing to the contrary, we must presume that the court below acted rightly and upon reasons legal and sufficient. If the reason was, as suggested by the motion to reinstate, that the case had been called up for dismissal out of its regular order on the docket, that certainly was a sufficient reason for reinstating it. Besides it was a matter within the discretion of the court below, which this court will not revise. In one of the cases already referred to, Houston v. Roberts, this court said: "The court in the exercise of its discretion may reinstate a case after it has been stricken from the docket, and in the exercise of that discretion this court will not control it, unless a strong case be shown of the improper exercise of that discretion." That is not the case before us.

[505] 3. The third alleged error is predicated solely upon the 13th section of our act of limitations of 1841, which provides that "no action shall be brought against any emigrant of the republic to recover a claim which was barred by the law of limitations of that country or state from which he emigrated," etc. 5 Statute, 166, sec. 13.

In the absence of this provision, the law of limitation or prescription of a foreign country could not of itself be pleaded in bar here, though to an action upon a claim which had been barred by such foreign law prior to the emigration of the party against whom the claim existed, upon the principle that the time of limitations of actions is governed by the *lex fori*, 2

Kent's Com. 462, 463; 6 Wend. 475; 17 Mass. 55, unless in those cases where the laws of limitation or prescription of the foreign country do not only extinguish the right of action, but the claim of title itself, *ipso facto*, and declare it a nullity after the lapse of the prescribed period. Story's Conflict of Laws, sec. 582.

"The authorities," said Shaw, C. J., in Bulger v. Roche, "both from the civil and common law concur in fixing the rule that the nature, validity and construction of contracts is to be determined by the law of the place where the contract is made, and that all remedies for enforcing such contracts are regulated by the law of the place where such remedies are pursued." 11 Pick. 36; 8 Pet. 361. "In regard to statutes of limitation or prescription of suits," says Mr. Justice Story, "there is no doubt that they are strictly questions affecting the remedy and not questions upon the merits." Conflict of Laws, sec. 576. They are treated by both the civil and the common law as regulations of suits and not of rights. Id. sec. 580; Pothier on Obl. n. 640, 641, 642.

"The common law has firmly fixed its own doctrine, that the prescription of the *lex fori* must prevail in all cases of personal actions. In all cases of real actions and of actions savoring of the realty, the prescription of the law *rei sitæ* [506] is also to prevail. And as by the common law no action of this sort can be brought *ex directo*, except in the place *rei sitæ*, it follows that the *lex fori* governs, as a universal rule applicable to all cases." Story's Con. of Laws, sec. 581.

This rule, that the law of limitations of the country where a contract is made is no bar to a suit in a foreign tribunal, has become a formulary in international jurisprudence (id. sec. 577), and indeed is not now controverted.

It was doubtless the object of the section of our statute referred to, section 13, to create an exception to the rule, and to enable a defendant whose liability was barred by the laws of the country from which he emigrated previous to the period of his emigration, to plead that fact in bar of the action here. It was the policy of the law to admit this defense and to give the defendant the benefit of it precisely in the same manner

and to the same extent as if he had been sued in the country of his former domicile, after the statute of limitations had closed upon the demand and before his removal to this country. But it could not have been intended to give the laws of a foreign country, *proprio vigore*, any force or validity here. And this construction accords with the literal import of the section. Its prohibition is, by its terms, made to extend only to the bringing of an action upon a claim which "*was barred*," etc. These words, in their most obvious sense, in the connection used, denote an event as having transpired anterior to the happening of another event, which other event must be the time when the party against whom there had been cause of action in a foreign country emigrated from such foreign country.

But in support of the plea of the act of limitations of Mississippi, we are referred to the authorities establishing the familiar rule in the construction of statutes of limitation, that where the statute has commenced to run it will continue to run notwithstanding the intervention of any impediment, which, if it had existed when the cause of action accrued, would have prevented the operation of the statute; [507] and it is supposed that this rule is applicable to the plea in the case under consideration. Had the parties returned to Mississippi after the period of limitation had elapsed, the rule might be successfully invoked in support of the plea in the courts of that state; but can have no application in the present case, for the plain reason that those laws can have no obligatory force out of their own jurisdiction. As to these parties and their rights the change of domicile suspended the power of the Mississippi statute to operate upon their rights of action in future, since that statute could have no binding *extra-territo-rial* force. Adverting to this principle Mr. Justice Story says: "It is no answer to say that when once the statute of limitations begins to run no subsequent impediment stops it from continuing to run. That is true in the nation whose laws contain such provisions or inculcate such a doctrine; but no other nation is bound to give effect to such provisions or to such a doctrine. They are strictly *intra-territorial* regulations and interpretations of the *lex fori* which other nations

are not bound to observe or keep. While the parties were domiciled there the statute of limitations continued to run against them; but it had not then extinguished any rights of action. When they changed their domicile the statute as to them and their rights of action, in respect to personal prop- erty or personal claims, was no longer operative or obligatory; but the statutes only of their new domicile." Id. sec. 582, b.

It is a maxim of international law, that "whatever force and obligation the laws of one country have in another, depend solely upon the laws and municipal regulations of the latter; that is to say, upon its own proper jurisdiction and polity, and upon its own express or tacit consent." Id. sec. 23; 8 Pet. 372. It is upon this principle that the laws of limitation of a foreign country cannot of themselves be pleaded in bar to an action in this, unless with the consent of this government. It is therefore solely to our own polity and laws that we must look for a determination of the question [508] as to how far the laws of limitation of foreign countries are to be respected in this.

The 13th section already quoted contains the only recogni- tion in our statutes of such foreign laws, and provides the only case in which they may be pleaded as an extinguishment of a right of action here. And as the present case does not come within the contemplation of that section, the defendant having emigrated from the state of Mississippi before the period of limitation prescribed by its laws had completely run, it is not a case in which the law of limitation of that state could be effectually pleaded in bar of the action. There was, therefore, no error in the judgment of the court overruling the defend- ant's exceptions to the replication of the plaintiff to the plea of the act of limitations of the state of Mississippi.

4. In the next place it is insisted that the court erred in sustaining the plaintiff's exceptions to the defendant's plea of a former recovery in the state of Mississippi.

The same distinguished jurist whose language we have before quoted (Story in his Conflict of Laws, sec. 599 a), after having quoted from the opinion of Lord Chief Justice Eyre in Philips v. Hunter, 2 H. Bl. 410, says: "The view which

was thus taken by the lord chief justice does not appear to have been acted upon to its full extent in subsequent times. It would seem a natural result from that view that if a suit was brought for the same cause of action in an English court, which had already been decided in favor of either party in a. foreign court of competent jurisdiction, and was final and conclusive there, that judgment might be well pleaded in bar of the new suit upon the original cause of action, and would,. if *bona fide*, be conclusive. It may be doubted, however,. whether the same doctrine is at present entertained in England. In a recent case the court seem to have thought that if a plaintiff has recovered judgment in a foreign country upon any original cause of action, he may, notwithstanding, sue in England upon that original [509] cause of action, or may sue upon the judgment there obtained, at his option; *because the original cause of action is not merged in such a judgment.*"

But if it be conceded as the rule of the common law that a foreign judgment pronounced by a court of competent jurisdiction over the cause and the parties may be well pleaded in bar of a subsequent suit upon the same cause of action between the same parties, 2 Kent's Com. 120, 3d ed., yet it is conceived that upon the adoption of our statute regulating the collection of foreign debts, 5 Stat. 1841, p. 44, sec. 2, the rule was otherwise in this country. That act prohibited the bringing of suits upon foreign judgments, but seems to have contemplated that they might be maintained upon the " original evidence " or cause of action. The language employed is not so clear and explicit as might be desired, yet when taken in connection with the subject matter and declared *object* of the law, seems susceptible of no other meaning, for an opposite construction would render the statute an act to *prohibit*, instead of what it is declared to be, " an act *to regulate* the collection of foreign debts." If this be the proper construction, it follows that a foreign judgment, not satisfied, can constitute no bar to a suit upon such " original evidence " or cause of action. For to give it that effect would be to defeat the object and intention of the act, in so far as that intention

was to permit suits at all upon the original evidence of indebtedness, which had passed into judgment in a foreign country.

The policy of the law seems to have been, by compelling the plaintiff to sue upon his original cause of action, to throw upon him the burthen of proving his case anew, without any aid from his former judgment; to let in every defense and to open anew the whole evidence and merits of the cause without regard to the former judgment, enabling the defendant to retry the whole merits and make out, if he can, a new case upon new evidence.

The conclusion to which the view we have taken leads us, [510] then, is, that after the adoption of the statute, and at the period of the institution of this suit, an action could not be maintained upon a foreign judgment, nor could such judgment, unless satisfied, be pleaded in bar of an action upon the original evidence of indebtedness; but in order to constitute the plea a bar, satisfaction of the judgment must be averred, i. e., that a former recovery in a foreign country without satisfaction was not, though with satisfaction it would be a bar to a subsequent suit in this country for the same cause. The plea of the defendant containing no averment that the former judgment had been satisfied, was not sufficient in law to preclude the plaintiff's right of action, and his exceptions, therefore, were rightly sustained.

5. Finally, it is contended that the court erred in the instruction given to the jury respecting the right of the plaintiff to recover upon the note sued on, and in permitting it to be given in evidence, when it appeared to have been indorsed by the plaintiff. The language of the supreme court of Louisiana in Robson v. Early, and in Thompson v. Flower et al. 1 M. (N. S.) 301, 373, seems to favor the proposition contended for; but the cases themselves, when looked into, will be found not to sustain the objection. The former of these was the drawer of a bill of exchange suing the acceptor; the latter was that of a payee suing the maker upon a promissory note which appeared to have been indorsed to a third party; and the principle of the cases is that mere possession of a promissory note is not, of itself, evidence of ownership, upon

which the plaintiff can maintain an action when the legal interest appears to be vested in another party.

In the case before us the indorsement was in blank and the note did not appear ever to have passed out of the hands of the plaintiff. The name of no indorsee appears, and there is, therefore, upon the paper no party other than the plaintiff in whom the legal interest can vest. Even had the indorsement not been stricken out, it does not appear that there is or ever was any other party entitled to sue upon [**511**] the note. But the question is settled satisfactorily, we think, by the supreme court in the case of Dugan v. The United States, 3 Wheat. 172, where after reviewing the cases they decided, Mr. Justice Livingston declaring the opinion of the court, "that if any person who indorses a bill of exchange to another, whether for value or for the purpose of collection, shall come to the possession thereof again, he shall be regarded, unless the contrary appear in evidence, as the *bona fide* holder and proprietor of such bill and shall be entitled to recover, notwithstanding there may be on it one or more indorsements in full subsequent to the one to him, without producing any receipt or indorsement back from either of such indorsees, whose names may be stricken from the bill or not, as he may think proper."

The authority of this case is decisive of the question before us, and indeed it goes much further than is necessary to sustain the court below upon the question under consideration. Also, in Lonsdale v. Brown, 3 Wash. C. C. 404, it was held that "possession of a bill by the payee which he had indorsed over is evidence that he has paid it to the person who has a right to call on him, though it is not reindorsed."

In Bayley on Bills, p. 103 of 2d Am. ed., it is said that "the indorsement of a bill or note passes no interest to the indorsee, so long as the indorser retains it in possession;" and see 2 Hamm. 56; 6 M. R. (N. S.) 15. And indeed it is difficult to conceive how the simple fact of the indorsement by the payee of his name upon the back of the note, when that indorsement seems to have been subsequently erased and the note to have remained in his hands, could divest him of his interest in the note and transfer it to another not designated

(452)

or known, or cancel its obligation, or change its legal import; and if not, it is not perceived how it could in any manner affect its admissibility in evidence or the plaintiff's right to maintain his action upon it.

[512] Upon the several grounds presented in argument and considered, we are of opinion, therefore, that there is no error in the judgment of the district court. But since the argument in this case, the case of Gautier v. Franklin, 1 Tex. 732, has been decided by this court; and this case, as presented by the record, comes within the principles asserted in that case, and by the rules there laid down appears to have been barred by the period of limitation prescribed by our statute, which was pleaded in the case. In his statement of the facts, however, the judge says that the defendant "admitted that the statute of limitations of four years of this state did not bar the plaintiff's right to recover." A question has arisen as to what shall be the effect of this admission; and in assenting, not without hesitation, to the conclusion to which we have come, I am influenced by my opinion respecting the rule in the case referred to of Gautier v. Franklin. That case was argued at the last term of this court in my absence. Before its decision, however, other cases involving the same question were submitted, in the consideration of which I participated. I was unable to concur in the conclusions of the court in that case; but not having been present at the argument, I did not feel at liberty to give an opinion as a member of the court sitting in the case, though in our consultations I opposed the views which finally prevailed against my most decided opinion of the law of the case. In subsequent cases turning upon the same question, I have felt constrained to yield to the authority of that decision. My dissent from the decision in Gautier v. Franklin is founded not so much upon any objection to the reasonableness or equity of the rule borrowed from the court of Cassation in France, considered in the abstract, or as applied in the cases cited from the courts of Louisiana,[1] as upon the belief that our

---

[1] The same court maintained a different doctrine in a case where the new law provided a shorter period of prescription than that fixed by the old law, and held that the new law "can be only *prospective* in its operation and effect

[513] legislature never intended or contemplated the adoption or application to the statute of that rule of construction. In my opinion they provided for every class of cases and every variety of case to which they intended the statute to apply; and neither left nor intended to leave any necessity or room for construction. And in confirmation of this opinion I need but refer to sections 8, 12, 24 and 25 of the act of limitations, 1841. From the very terms of the 1st section of the act, moreover, it seemed to me that they intended it to have no *retrospective* operation; but that it should act only *prospectively,* and take effect, in their own language, "*from* and *after*" both the passage of the act and " the cause of such action or suit;" that is, that suits should be brought within the prescribed period after both the accruing of the cause of action "and the approval and final passage" of the act. And that it could have such prospective operation only, I understood to have been the decision by the unanimous voice of the supreme court of the late republic, in the case of Whiting v. Grimes, decided at its last session. That decision, it is true, was made without reference to the cases cited from Louisiana; but had those cases and that of Ross v. Duval been before the court, I have not supposed that the result would have been different. That decision, though not published, was doubtless known to counsel in the present case; and it is most probable that the admission that the present case was not barred by our statute, was made in

on the con racts and rights which existed at the time of its enactment," and that the remedy must be pursued under the new law "according to the time therein prescribed, considered *prospectively* from the date of the last law." Union Cotton Manufactory v. Lobdell, 7 Martin (N. S.), 108, 110, 111. The more recent Louisiana decisions, cited in Gautier v. Franklin, stand alone, sustained, it is believed, by no other court in the Union or in England, and they are applied to a very different state of case from that which exists under our laws. In Louisiana there had been no interruption of the law of prescription. One *term* or period of time was merely substituted for another. There was no intervening space of time between the two periods, when no law upon the subject existed; but the law of prescription remained in force with only a change in the time requisite to give it effect. Here, there was a period of nearly a year during which no law of limitation existed. The former laws, having been *repealed,* could not remain *in force* for any purpose; nor could they for any purpose be *revived* or become operative by anything short of an act of legislation.

reference to and upon the authority of that decision, and was [514] therefore intended as an admission of the *law*, and not of the fact. That decision certainly justified the admission, though there had been no exception to take the case out of the operation of the statute. I should certainly have been of the same opinion which counsel seem to have entertained. And it may safely be asserted that until the case of Gautier v. Franklin was decided, it was considered by the whole legal profession in this country that there was no room for doubt as to the proper construction of the statute; and that it was intended to bar the right of action upon a contract in writing for the payment of money only after four years from the time of its passage and the inception of the cause of action, subject to the exceptions embraced in the 8th and 24th sections, and that it could only operate prospectively. If this opinion was error, it was a common error. It may be, however, that the defendant made the admission in question because he was aware that the plaintiff could prove facts which would bring him within some exception, and thus take the case out of the operation of the statute, and that, in consequence of the admission, the plaintiff was prevented from averring and proving the facts which constituted the exception. It would, therefore, on the one hand, be an act of injustice too palpable and glaring to receive judicial sanction, to hold bound and condemn a party, upon an admission made under such circumstances as we have supposed; and on the other, great injustice might be done by refusing the plaintiff an opportunity of showing, if he can, by appropriate averments and proof, that the case is within some exception which takes it out of the operation of the statute. An opposite rule ought not to prevail in this case to that adopted by a majority of the court in the case of Gautier v. Franklin, merely because it happens that one of its members is disqualified from sitting in the case. And if, as I have supposed, the admission which makes the only point of difference between the cases, and can now constitute the only basis on which to rest an affirmance of the judgment, was made and intended as an admission [515] of the law only, and upon the authority of a decision of the court of the last resort, then in

force, but which has been since overruled by this court, it is manifest that it ought to be excluded from our consideration and not entertained as the foundation of a final judgment, divesting the party, it may be, of his property and rights. Such a condemnation could with little propriety be said to be by due course of the law of the land.

Regarding the admission as so made, it must be rejected, and the judgment which rests upon it, therefore, held erroneous.

It may be supposed that, as every one is presumed to know the law, and as ignorance of the law excuses no one, the defendant ought not to be permitted to escape the effect of his admissions, though made under a mistaken belief as to the law. But if the late supreme court, of which two of ourselves were then members, may be excused for ignorance of the law, so ought the defendant to be. He cannot, however, with justice, be said to have mistaken the law *at the time* when he made the admission; for the reason that the decision of the late supreme court then was, or at least by all inferior jurisdictions was to be received as the law until changed by some act of the legislature, or overruled by the decision of this court.

We are of opinion, therefore, that the judgment be reversed and the cause remanded for further proceedings.

---

[516] REUBEN W. REYNOLDS vs. WILLIAM SKELTON — Appeal from Lamar County.

Where a party, plaintiff, brought suit against the defendant to recover the amount of a promissory note made by the latter, but which the former claimed to have paid as the security thereon, and introduced the note in evidence: *Held*, that the possession of the note by the plaintiff, without any other evidence, was presumptive proof that he had paid the same, and sufficient to establish the fact, unless rebutted.

The 5th section of the act of congress, extra session, 1845, prescribing the mode of authenticating foreign judgments, etc., was intended to apply to cases only wherein a corporation, or its assignee, was plaintiff.

This suit was brought by the appellee, who was plaintiff in the court below, to recover a sum of money alleged by the