GEORGE PERRY, PLAINTIFF IN ERROR, VS. NICHOLAS LEWIS, DEFENDANT IN ERROR.

1. The general principle adopted by civilized nations is, that the nature, validity and interpretation of contracts, are to be governed by the *lex loci* of the country where the contracts are made or are to be performed; but the remedies are to be governed by the *lex fori*.
2. That portion of the period of prescription which has run under the limitation laws of another State, cannot be united with the time which has elapsed under the laws of this State, so as to complete a statutory bar of the right of action.
3. The rule is that a foreign statue of limitations is inoperative except in cases where it not merely professes to bar the remedy, but goes directly to the extinguishment of the debt, claim, or right.

Writ of Error to the Circuit Court of the Western Circuit for Santa Rosa County.

The facts of the case are contained in the opinion of the Court to which reference is made.

*G. S. Hawkins*, for Plaintiff in Error.

*R. L. Campbell*, for Defendant in Error.

PEARSON, J., delivered the opinion of the Court.

This is an action of Trover brought to recover the value of a slave lost by Lewis, the plaintiff below, in Sumpter County, Alabama, in July, 1844—sold by one Jones, to Henshaw of Covington County, Alabama, on the 11th November, 1844—by Henshaw again sold to Criglar of Santa

Rosa County, Florida, on the 26th June, 1848—and finally sold by Criglar to the present plaintiff in error, Perry, who was the defendant below of the same county and State, on the 26th October, 1849, the plaintiff being ignorant whose possession the slave was in, until April, 1851.

Upon demand and refusal of the delivery of the property to plaintiff, action was brought on the 2d June, 1851.

There were several pleas filed by defendant, but the only one relied upon for the defence was the statute of limitations of this State. Upon the trial below, the court was moved to instruct the jury, "That if they were satisfied from the evidence that there was a continued adverse possession of the negro by Henshaw, Criglar and Perry, under their respective bills of sale, part of the time in the State of Alabama, and part of the time in the State of Florida, and that the time during which Henshaw had adverse possession of the negro in Alabama under the sale to him, when connected with the time during which Criglar and Perry successively had adverse possession of him in the State of Florida under the respective sales to them, would, when added together, amount to five years next before the commencement of the suit, then the plaintiff ought not to recover." Which instruction the court refused—the defendant excepted, and the jury having found for the plaintiff, and judgment being rendered accordingly, the defendant's counsel appealed and assigns such refusal as error.

The statutory bar of the action of Trover in Alabama is six years—in this State five years. From the foregoing statement it is apparent that the plaintiff was not barred during the possession of Henshaw in the State of Alabama under and by virtue of the statute of limitations of that State; and it is equally manifest that he was not barred under our statute of limitations by the possessions of Crig-

lar and of the defendant Perry, even if connected together, in this State.  While it appears that if the possession of Henshaw in the State of Alabama can be tacked to that of Criglar and Perry in this State, the prescription of our statute would be complete.

The questions therefore presented for our consideration are,

1st.  Is the doctrine of tacking possessions admissible in an action of Trover?

2d.  If such doctrine is admissible will it apply in a case where one of the possessions relied upon occurred in another State?

1.  Upon the first question we express no opinion, because the minds of the Court are not fully agreed in relation to it, and a majority of the Court are of opinion that a proper solution of the second question is decisive of the case. The principles in regard to tacking possession will be considered when they shall necessarily arise before us.

2.  Conceding for the purpose of the present argument that the doctrine of tacking does prevail to some extent, we are met by the second question as to whether a statutory bar can be made out by tacking part of the time which the statute of limitation has run under the statute of another State, to another part which has elapsed under the statute of this State.  This question is so well settled upon principle and authority that it scarce requires discussion at this day.  It was not made or discussed before us, but must necessarily control this case.  Our statutes of limitation, by an amendment enacted in 1846, Thomp. Dig., p. 443, § 2, place non-resident plaintiffs upon the "same footing" with resident citizens of the State.  Nor is there any special exceptions from the general law of limitation in behalf of defendants, save those contained in the amendments of 1833 and 1835, Thomp. Dig. p. 445, § 1 and 2, by

which they are permitted in cases where the cause of action arose abroad to plead the statute of limitations of the foreign state or place where it accrued, provided it would be a good bar in such place. This provision is obviously not applicable to a defendant whose liability arose in this State —nor has the defendant sought to obtain its benefit by pleading the prescription of Alabama. The parties then stand simply upon the footing of two citizens of the State litigating a cause of action arising in the State, within the limit of State prescription. For it is manifest the plaintiff had no cause of action against the defendant Perry, previous to his possession of the negro by purchase from Criglar, on the 26th October, 1849, although a right of action had accrued to him in the State of Alabama, as far back as the 11th November, 1844, against Henshaw, who purchased at that time from Jones. This right of action might have been pursued successfully at any time within the statutory period against Henshaw in the State of Alabama, and if neglected until Henshaw's possession ripened into title by the lapse of time in Alabama, then Henshaw's sale to Criglar would have conferred title, and in like manner Criglar's conveyance to the defendant Perry would have vested the title in him, of which he might have availed himself under the general issue. 5 Clark & F. Rep. 1, 15, 16, 17; 3 Strob. R. 331; Story's Conflict of Laws, §582; 5 Yerger, p. 1. But Henshaw's possession was less than the statutory limitation of Alabama, and therefore conferred no title upon him. There is then no ground of defence for the defendant but in assuming that the statute of Alabama, having commenced to run against Henshaw, would continue to run, notwithstanding intervening disabilities, not only in his favor but in favor of those claiming under him, although citizens of a different State. This is a familiar and sound principle of law in its just application, but it can have no

force or effect beyond the jurisdiction of the forum in which it is invoked. It is a principle of the law of prescription, and like that, a part of the *lex fori* and can have no *extra territorial* authority. Judge Story in his work on the Conflict of Laws, sec. 582, says : " It is no answer to say that when once the statute of limitations begins to run, no subsequent impediment stops it from continuing to run. That is true in a nation whose laws contain such provisions or inculcate such a doctrine, but no other nation is bound to give effect to such provisions or to such a doctrine.— They are strictly *intra territorial* regulations and interpretations of the *lex fori*, which other nations are not bound to observe or keep." Had the plaintiff sued Henshaw in the courts of Alabama as regulated by her laws, he might have availed himself of this principle in those forums if necessary to his defence, " but it can have no application in the present case, for the plain reason, that those laws can have no obligatory force out of their own jurisdiction."— Justice Wheeler in Hays vs. Cage, 2 Texas Rep. 507. It is a maxim, says Judge Story, (in his work above quoted,) of international law that "whatever force and obligation the laws of one country have in another, depend solely upon the laws and municipal regulations of the latter ; that is to say, upon its own proper jurisdiction and polity, and upon its own express or tacit consent." The only authority given to the statute of limitations of Alabama in our courts, is under the laws of 1833 and 1835, before cited, which it has been shown are inapplicable to this case. It has been urged that the principle that the statute of limitations only applies to causes of action subsisting within the State, might give rise to stale demands arising in other States. The argument *ab inconvenienti* is entitled to but little consideration in legal adjudications. We must declare the law as we find it. But we think this very objection

was in the view of the legislature, and designed to be remedied by the two acts of the General Assembly last cited, securing the right to defendants to plead the statute of limitations of other States in all cases where it would prove a bar in those States. Thus at once tacitly admitting that the law was as we state it, and providing a remedy for the further protection of our citizens from stale foreign demands originating without our jurisdiction. "The general principle by civilized nations is, that the nature, validity, and interpretation of contracts are to be governed by the laws of the country where the contracts are made or are to be performed, but the remedies are to be governed by the laws of the country where the suit is brought, or as it is compendiously expressed by the *lex fori*." 8 Peter's S. C. Rep., 361.

We come then to the final question, whether the period of prescription which has partly run under the laws of another State can be united with the time which has elapsed under the laws of our own State so as to complete a statutory bar. Mr. Justice Story has fully considered this question in his compendious work on the Conflict of Laws, sec. 582, and concludes that it cannot be done except in cases where the foreign statute does not merely profess to bar the remedy, but goes directly to the extinguishment of the "debt, claim, or right." Chancellor Kent is equally clear and decisive on the question in Ruggles vs. Keeler, 3 Johns. Rep., 261. In Alexander vs. Burnet, 5 Richardson's Law Rep. 189, the Supreme Court of South Carolina have elaborately considered and decided the question in the same way, under circumstances nearly identical with those presented in this case. Town's Executor vs. Bradwell, 1 Stewart & Porter, Ala. Rep. 36, establishes the same principle. And to the same effect are Gautier vs. Franklin, 1 Texas Rep., 732; Hays vs. Cage, 2 Texas Rep.,

501 ; 1 Caine's Rep., 402 ; 7 Mass. Rep., 515 ; 14 Mass. 203; and 13 Missouri Rep., 160. Still further authority might be cited, but we deem the foregoing sufficient to establish the principle upon which this case turns. It is consonant with reason and principles of justice, that where one of two innocent parties must suffer a loss, it should fall upon him who has been most remiss in securing his rights. Such is the result from the application of the rules of law in this case. No degree of diligence or of caution could have protected the plaintiff against the abduction of his slave, either by kidnapping or by his own volition ; whereas the defendant was put upon his guard by the principles of the common law, *caveat emptor* being the rule. It was his duty to have enquired into the character of the title which he purchased, and if a doubt arose of its validity, to have secured himself by a sufficient warranty from the vendor ; failing in this, he has acted in his own wrong and cannot justly complain of the assertion of the plaintiff's rights.

Let the judgment of the Circuit Court be affirmed with costs.

DUPONT, J., also delivered the following opinion :

I entirely concur in the judgment of affirmation which has just been pronounced in this cause, but do not concur in either the doctrines contained in the opinion of the majority, nor in the reasoning by which those doctrines are sought to be enforced. Without entering into an argument in reference to the correctness of those doctrines, or of their applicability to the facts of this case, I shall content myself with this brief expression of my *dissent*, and proceed at once to give the ground of my conclusion and the views which I entertain of the whole case.

The only question raised or argued before us at the hearing was whether, in an action of *trover*, a defendant,

in order to complete the bar of the statute of limitation, shall be allowed to avail himself of the time which may have elapsed from the conversion of the property by his immediate vendor and by those under whom he claims, or whether he shall be confined to the date of his own conversion as the point of time from which the running of the statute shall be calculated. In other words, whether the defendant in possession shall be allowed to add to the period of his possession the time that the property may have been in the adverse possession of those under whom he claims title, so as to make out the full statutory bar of five years.

This is a question of much greater difficulty than it would seem to be at the first blush, involving as it does considerations of paramount importance, bearing upon the protection and enjoyment of personal property, whether considered in reference to the rights of the original owner or to those of the *bona fide* purchaser. It is somewhat strange, that in our examination of the English Reports, we have been unable to find a single case bearing immediately upon the question raised in this case. It is true that there are numerous cases involving the question of a *fraudulent concealment* of the property, and also the further question of the *want of knowledge* by the plaintiff of the particular date of the conversion. But these are questions essentially different from the one under discussion, which is the naked right of the defendant to lap the period of his possession upon that of those under whom he claims, so as to make out the full time required for the statutory bar, and therefore afford no light for its elucidation.

The counsel for the appellant cited at the argument Angel on Limitation, 513, to show that in ejectment several adverse possessions, being in privity one with the other,

and all referable to the same entry, might be united or tacked together so as to make up the full time of the statutory bar; and it was contended that in this respect there is no difference between the action of ejectment for the recovery of the possession of land and that of trover for the value of personal property. The doctrine of a continuity of possession, where land is the subject of the suit, seems to be well established in the English courts, and there is but little contrariety of opinion on the subject in our State courts. The argument of the appellant's counsel is based entirely upon analogy, but I am not satisfied that any analogy really exists. It seems to me that there is a manifest difference in the principles upon which the two actions proceed. In ejectment, the subject-matter of the suit is the possession of the land itself, the damages being usually only nominal, and the action must be brought against a party in the possession of the premises. Possession is a species of *title*, and, as such, may be transferred by assignment. When one occupant surrenders the *possession* to another, he surrenders his *liability* to answer for the occupancy, and that other assumes it and with it whatever *benefit* may result therefrom. There would seem, then, to be a propriety in allowing the defendant in ejectment to avail himself of all the rights growing out of and the incidents attaching to the thing assigned, viz: the *entry* of the assignor, and that of those under whom he may claim.

The theory upon which the action of trover proceeds, and the philosophy upon which it is based, is quite different from this. The subject-matter of the suit is not the thing itself, but only the *value* of the thing, and the action may be brought against any one who, at any time, may have been guilty of a wrongful conversion, whether he be in or out of possession at the time of the institution of the

suit. It thus appears that "possession" does not enter into the theory of this action. Nothing is predicated thereon. The entire gist of the action is the wrongful *conversion*. Now, a wrongful conversion is a *tort*, and I am aware of no principle upon which a tort can be held to be transferable or assignable. If I be correct in this that a tort is unassignable, (and of this there can be no question,) upon what logical principle can the defendant who is sued avail himself of the benefit growing out of the prior conversion of a former wrong-doer—a benefit growing out of that which was never assigned to him, and which, in fact, is incapable of assignment? Different from the principle governing the assignment of land, when one wrongful possessor of personal property surrenders his possession to another, he does not therewith surrender his *liability*, but he continues to be liable for his own act of conversion, and it would seem, upon just and logical principles, that, as the *liability* continues, any *benefit* growing out of the time of the conversion ought also to remain with him. But the benefit cannot both remain with him and be in another at one and the same time, and yet upon no other hypothesis can the assignee avail himself of the conversion of his assignor. For these reasons I am inclined to the conclusion that the analogy contended for by the counsel for the appellant does not exist.

But it may be said that my argument is based upon technicalities. This is doubtless true to some extent, but it does not therefore weaken it. Technicalities may be legitimately invoked whenever the use of them is intended to subserve a legitimate purpose, viz: the elucidation of truth; and I am greatly in error if any argument upon the distinctive characteristics of the various actions can be framed without in some measure resorting to technicalities.

But, aside from the reasons growing out of the distinctive characters of the two actions, there are considerations of stern justice and enlightened policy, based upon the peculiar nature of the two kinds of property which peremptorily demand that the mode of applying the statute of limitation should be different when sought to be applied to suits in which the one or the other is involved. Land is of a permanent and fixed nature. It has no *locomotion*, nor can it be stolen and secreted or carried away by any one. Its particular. location is always presumed to be known to its rightful owner, and if any entry be effected thereon, the act is always open to detection, and the perpetrator of the wrong is unconcealed. If, therefore, a stranger should enter upon land, and after remaining in possession for a time, should convey his possession to a *bona fide* purchaser, and he to another, and so on through any number of assignments, and eventually the mere naked possession shall ripen into a statutory title which shall be paramount to the title of the original and true owner, and thereby deprive him of his property, he ought not to be permitted to complain as against a *bona fide* purchaser in possession; for the injury is the legitimate result of his own wilful negligence. By proper care and vigilance on his part, he may always protect his real property from the unlawful entry of other persons, and even if made, he may readily arrest the operation of the statute by the timely institution of a suit, the party to be sued being always known. As between one so culpably negligent of his rights and one purchasing for a full consideration and without notice, when the question of loss arises, there would seem to be no room for doubt. Not so, however, with regard to personal property. It has no fixed or permanent locality—it is the subject of larceny—it may be stolen and carried beyond the reach or knowledge of the rightful

owner, and a large and by far the most valuable portion of it in this country is possessed of locomotion, which greatly facilitates its abstraction and concealment. No degree of care or watchfulness is sufficient to protect it from the grasp of the midnight robber, and the utmost vigilance too often fails to detect the perpetrator of the wrong, or to discover the locality of the property until time, with its blighting touch, under the operation of the statute, has deprived the rightful owner of his property.

But there is another argument, equally potent, in support of these views, growing out of the consideration that every purchaser of property may always protect himself from loss arising from a failure of title, either by taking a warranty of title, or by paying for the property less than the market value and taking upon himself the risk of the title. Should there happen to be a failure of title in the case first instanced, he is fully protected by the covenant of warranty; and if a failure happen in the other case, he is in no worse condition than is every *insurer*. He takes upon himself the risk, and if loss occur, *it is* but reasonable and right that he, and he only, should bear it. As between such a purchaser (until his title shall have ripened into full maturity by lapse of time,) and the innocent owner, who has been deprived of the possession of his property without any fault or negligence on his part, if loss is to occur to either, it ought to be borne by the former.

It must be noted in this connection, that in thus defining the right of the owner as being paramount to that of the purchaser, the conclusion must be taken with the qualification that he is innocent of any *fault* or *negligence* whereby the purchaser has been induced to receive the title from his vendor. If the owner stands by and permits one who has been guilty of a wrongful conversion of his property to dispose of it to a third party, or if, after he has had knowledge of the act of conversion and of the per-

son to be sued, he neglects within a reasonable time to enforce his right to the property, he will be *estopped* to deny the title of the vendor, and that of the vendee will be protected. Such protection, however, is independent of the bar created by the statute of limitation.

It is proper also to remark, that when the claim of the vendor has ripened into a perfect title by the lapse of the statutory period prescribed, the title of his vendee, or of those claiming under him, will be protected by his possession against the assertion of the claim of the original owner; for then the transfer is a transfer of a valid title—a title conferred by law from the lapse of time, and to have the benefit of it, it is not necessary for the vendee, when sued, to plead the statute, but he may rely upon the title as in ordinary cases.

I have thus far purposely refrained from any reference to the two American cases cited by the appellee, for the reason, that although the conclusion in each fully supports my position, yet the reasoning of the court is so unsatisfactory, that I have preferred to base my argument upon principle rather than to invoke the aid of these precedents.— The conclusion in the case of Beadle vs. Hunter, 3 Strobh. Law Rep's. 331, is based entirely upon what is declared to be the rule in South Carolina in respect to actions of ejectment for the recovery of the possession of lands, viz: that in such cases, two or more possessions shall *not* be linked together, so as to make out the time prescribed by the statute. The argument is founded upon *analogy*, and is therefore in conflict with the view which I have taken of the question. The other case cited of Wells vs. Ragland, 1 Swann R. 501, fully sustains my position in regard to the want of *privity* between two or more, who have each been guilty of a wrongful conversion. But the argument, though strongly presented, is too brief to afford a full view of the

reasons upon which it is based. In our researches among the American reports, we have found one case in which the point under discussion was expressly ruled the other way. I allude to the case of Smith's Adm'rs vs. Newby, 13 Missouri R. 159. The decision in this case is predicated upon what I conceive to be a strained construction of the statute, and therefore inconclusive upon the point.

The particular phraseology of the statute is invoked by the advocates of either side of the question under discussion as an argument in support of their respective hypotheses. By the one, it is insisted that the words of the statute create a general inhibition referable to the right of the plaintiff exclusively, and that it is not at all applicable to the right of the defendant, that the statute begins to run from the first moment when a cause of action in reference to the thing in controversy arises against any one whomsoever, and that its running is not confined to the cause of action counted upon in the particular suit. By the other, it is insisted that the words of the statute limit its operation to the particular cause counted upon, and that it is not allowable to link the possession of the vendor to that of the vendee so as to complete the full statutory period. The advocates of these two hypotheses insist upon applying their respective constructions of the statute to every case, regardless alike of the *nature* of the thing which constitutes the subject-matter of the suit, and the distinctive characteristics of the action to be brought for its recovery. It is to this want of discrimination that we may attribute the wide difference of opinion that exists upon a question of every day occurrence. It is said, however, in some of the reported cases, that to discriminate in the application of the statute as I have intimated, would be to affix to it *qualifications and limitations* never contemplated by the Legislature. This is mere assumption and the result of a want of reflection, for there

is nothing better understood in jurisprudence, than that in the application of many of the ordinary principles of law they are subjected to material modifications when applied to the one or the other of the two great classes of estates. If this be so with reference to the ordinary principles of law, why may it not equally obtain in the application to statutes ?

The result of this argument is, that in an action of Trover, where the statute of limitation had fully run in favor of the vendor, the sale to the defendant sued confers a *title* to the property in controversy, paramount to that of the original owner, and that the defendant may protect himself by a plea of *title*, and is not put to the plea of the statute. But that where the statutory bar was not complete at the date of the transfer to the defendant, he will not be allowed, under a plea of the statute, to link the period of his possession to that of those under whom he claims, so as to make out the time prescribed by the statute, within which the suit is to be brought.

Applying these conclusions to the case before us, it will be readily perceived that I am of the opinion that the Judge of the Circuit Court did not err in refusing to give the instruction prayed for, which constitutes the only error complained of.