[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 2, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10544

_____

D. C. Docket No. 06-01180-CV-ORL-31-UAM

UNITED STATES FIDELITY & GUARANTY COMPANY,

Plaintiff-Appellant,

versus

LIBERTY SURPLUS INSURANCE CORPORATION,

Defendant-Third-Party-
Plaintiff-Appellee,

UNITED STATES FIRE INSURANCE COMPANY,

Defendant,

versus

ALLEN IRONWORKS, INC., et al.,

Third-Party-Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(December 2, 2008)**

Before BLACK, PRYOR and COX, Circuit Judges.

PER CURIAM:

This appeal presents the question whether the law of the place of
contracting, which is Massachusetts, or the law of the place of the insured's risk,
which is Florida, governs a coverage dispute under an insurance policy for a
commercial contractor.  Liberty Surplus Insurance Corporation insures the
operations of John T. Callahan & Sons, Inc., a commercial contractor, based in
Massachusetts, that has construction projects in Florida and other states.  Westlake
Apartments, Ltd. obtained an arbitration award against Callahan for damages that
arose from work performed by Callahan and its subcontractors on a project in
Florida.  Callahan subrogated its interests to United States Fidelity & Guaranty
Company, and USF&G filed this action to recover under the insurance policies
issued by Liberty, which provide comprehensive general liability coverage.  The
district court determined that the Supreme Court of Florida would apply the law of
Massachusetts, under the doctrine of <u>lex loci contractus</u>, and the policies do not

2

provide coverage for the claims. USF&G appeals and argues that the Supreme Court of Florida would apply the law of the situs of the insured risk and, under the law of Florida, the claims of defective workmanship by USF&G would be covered under the policies. Because we conclude that this appeal raises a question of state law that is unsettled, we certify the question to the Supreme Court of Florida to determine which law governs the insurance policy.

## I. BACKGROUND

Callahan is a commercial contractor that primarily works in Massachusetts and Florida. Callahan is a Massachusetts corporation with its principal place of business in Massachusetts. In December 1999, Callahan entered a contract with Westlake Apartments, Ltd. for the construction of an apartment complex in Sanford, Florida. The agreement required Callahan to post a payment and performance bond. Callahan obtained the bond from USF&G. Callahan, as principal, and USF&G, as surety, issued the bond and named Westlake as an owner-obligee.

In 2001, Callahan applied for a commercial insurance policy from Liberty. Callahan submitted the application from its Massachusetts office to an insurance broker in Massachusetts. Before Liberty issued the policy, it investigated the operations of Callahan. That investigation revealed that Callahan was a "general

3

contractor with work performed generally in [Massachusetts and Florida with] some work starting in" Connecticut.

The investigative file included a "Schedule of Contracts" that listed the active projects of Callahan, including the Westlake project. Liberty knew about the Westlake project in Florida. Laura Corwin, the underwriter for the Callahan policy, testified that Liberty was aware that Callahan "worked in Florida, had offices in Florida, and that Liberty 'was being asked to insure operations in Florida.'"

Liberty issued Callahan a commercial general liability insurance policy effective from January 1, 2002, to January 1, 2003. The policy was mailed to Callahan in Massachusetts. Liberty issued a second policy effective from January 1, 2003, to January 1, 2004. The policies provided Callahan with liability coverage for negligent conduct that constituted a covered "occurrence" and occurred in "Massachusetts, Florida, or any other state in which [Callahan] operated. The policies did not provide casualty insurance for the real property on which [Callahan] was conducting its construction activities."

Problems arose at Westlake Apartments, and after repeated attempts to correct the defects, Westlake demanded arbitration with Callahan and USF&G. Liberty acknowledged the arbitration demand, reserved its rights under the policy,

and provided counsel to Callahan to respond to the arbitration demand. Before the arbitration, Liberty informed Callahan's counsel that it would no longer participate in the defense of Callahan. USF&G, as surety for the project, and Callahan entered a settlement agreement with Westlake. Under the settlement agreement, USF&G was "subrogated to the position of Callahan against Liberty[,]" and Callahan and Westlake assigned their rights against Liberty to USF&G.

USF&G brought this action for breach of contract against Liberty to recover the full amount of the settlement. USF&G argues that the law of Florida governs and the damage to the Westlake apartments, caused by the defective work of subcontractors, is covered by the Liberty policies. Liberty asserts that the law of Massachusetts applies and bars coverage under the policies. The parties filed cross-motions for partial summary judgment and disputed the applicable state law. The district court applied the rule of lex loci contractus and held that the law of Massachusetts governed the interpretation of the insurance policies. Based on the application of the law of Massachusetts, the district court later granted summary judgment in favor of Liberty.

## II. DISCUSSION

When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to

determine which substantive law governs the action. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941). This diversity action was commenced in Florida. This Court "must determine which state's substantive law the Florida Supreme Court would choose to govern interpretation of the [Callahan] polic[ies], as [it is] 'bound to decide the case the way it appears the state's highest court would.'" Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1118 (11th Cir. 1990) (quoting Towne Realty, Inc. v. Safeco Ins. Co. of Am., 854 F.2d 1264, 1269 n.5 (11th Cir. 1988)).

Florida courts traditionally have applied the doctrine of lex loci contractus and held that the law of the state where the contract was made or to have been performed governs the interpretation of the contract. Id. at 1119. This doctrine was recognized as early as 1856 in Perry v. Lewis, 6 Fla. 555 (1856). The Supreme Court of Florida stated, "The general principle by civilized nations is, that the nature, validity, and interpretation of contracts are to be governed by the laws of the country where the contracts are made or are to be performed . . . ." Id. (internal quotation marks omitted). Since then, Florida courts have adhered to the rule of lex loci contractus in most contractual disputes, including those that involved automobile insurance policies, see Sturiano v. Brooks, 523 So. 2d 1126, 1129 (Fla. 1988), and uninsured motorist policies, see Lumbermens Mut. Cas. Co.

6

v. August, 530 So. 2d 293, 295 (Fla. 1988).

Florida courts have departed from the rule of lex loci contractus in limited instances. Under the public policy exception, Florida courts depart from the rule of lex loci contractus "'for the purpose of necessary protection of [Florida] citizens [and to enforce] some paramount rule of public policy.'" State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1164 (Fla. 2006) (quoting Herron v. Passailaigue, 110 So. 539, 542 (Fla. 1926)). Florida courts also have departed from the rule of lex loci contractus in disputes that involve contracts related to the conveyance or devise of real property. See In re Estate of Swanson, 397 So. 2d 465, 466 (Fla. Dist. Ct. App. 1981); Kyle v. Kyle, 128 So. 2d 427, 429 (Fla. Dist. Ct. App. 1961). As this Court noted, "In Florida, . . . the validity of a contract to convey an interest in real estate is governed by the law of the state in which the real estate lies." Xanadu of Cocoa Beach, Inc. v. Zetley, 822 F.2d 982, 985 (11th Cir. 1987).

In Shapiro, we held that the Supreme Court of Florida would depart from the doctrine of lex loci contractus and would apply the law of the situs to interpret a contract that insures a stationary risk. 899 F.2d at 1119. The insurance policy in Shapiro, which had been issued in California, provided general liability coverage for a nightclub in Florida and similar establishments located in other states. Id. at

7

1117–18. We ruled that the Supreme Court of Florida would use the Restatement (Second) of Conflicts of Laws and apply Florida law because the policy insured a risk in Florida whose location was "unchanging." Id. at 1119–21. We have followed our precedent in Shapiro. See LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511 (11th Cir. 1997).

In a recent decision that involved automobile insurance, the Supreme Court of Florida reiterated its general rule in broad terms: "[I]n determining which state's law applies to contracts, we have long adhered to the rule of lex loci contractus." Roach, 945 So. 2d at 1163. The court stated unequivocally, "We have never retreated from our adherence to [the rule of lex loci contractus] in determining which state's law applies in interpreting contracts." Id. at 1164. The court also restated its rejection of the most significant relationship test from the Restatement (Second). Id. at 1163–64.

The parties dispute which law governs the interpretation of the insurance policies issued to Callahan. Liberty contends, on the one hand, that the firm adherence of the Supreme Court of Florida to the rule of lex loci contractus establishes that the law of Massachusetts, the state of contracting, applies to the insurance policies. USF&G maintains, on the other hand, that Florida law governs the interpretation of the policies because Florida courts would apply the law of the

8

situs under the Restatement (Second) to policies for comprehensive general liability that insure risks related to fixed property in several states. According to USF&G, Florida law governs the interpretation of the policies for claims related to the Florida projects for risks known to the insurer, Liberty, when the policy was issued. Neither party cites a decision of the Supreme Court of Florida that directly controls this issue.

The question whether Massachusetts or Florida law applies is determinative of this appeal. The parties agree that, under Massachusetts law, the policies do not provide coverage for the losses associated with the Westlake project and the decision of the district court should be affirmed. If the law of Florida governs, USF&G contends that the policies insure against defective work by a subcontractor and provide coverage for the Westlake damages. Liberty responds that, even under the law of Florida, the policies do not provide coverage. If the law of Florida governs the policies, then we would reverse and remand to the district court to apply the law of Florida.

We conclude that the issue presented in this appeal is unsettled under Florida law and should be certified to the Supreme Court of Florida. "This [C]ourt may certify questions of state law to the state's highest court." MCI Worldcom Network Servs. v. Mastec, Inc., 370 F.3d 1074, 1078 (11th Cir. 2004). Florida law

9

provides that the Supreme Court of Florida may answer questions of state law, certified by this Court, that are "determinative" of the appeal when "there are no clear controlling precedents in the decisions of the Supreme Court of [Florida]." Fla. Stat. § 25.031; Fla. R. App. P. 9.150(a).

## III. CONCLUSION

Because we conclude that this appeal presents an unsettled question of Florida law that is determinative of our decision, we respectfully certify the following question to the Supreme Court of Florida for instruction:

DOES THE DOCTRINE OF LEX LOCI CONTRACTUS APPLY TO A DISPUTE ABOUT COVERAGE THAT INVOLVES A POLICY FOR COMPREHENSIVE GENERAL LIABILITY INSURANCE, MADE OUTSIDE OF FLORIDA, THAT INSURES THE OPERATIONS OF A CONTRACTOR ON A PROJECT LOCATED IN FLORIDA?

The phrasing of this question should not limit the consideration by the Supreme Court of Florida of the issue in this appeal. "This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). The record, along with the briefs of the parties, shall be transmitted by the Clerk to the Supreme Court of Florida for assistance in answering this question.

**QUESTION CERTIFIED.**

10