Kirk **DAVID, on behalf of himself and others similarly situated, Plaintiff,**

v.

**AMERICAN SUZUKI MOTOR CORPORATION and Suzuki Motor Corporation, Defendants.**

No. 1:08–CV–22278.

United States District Court, S.D. Florida.

June 16, 2009.

Alexander Clark, Bradley Winston, Winston & Clark, Plantation, F.L., Kimberly Lynn Boldt, Alters, Boldt, Brown, Rash & Culmo, P.A., Miami, F.L., Michael S. Levin, Ruben Honik, Stephan Matanovic, Golomb & Honik P.C., Philadelphia, PA, for Plaintiff.

Ismael Diaz, Stanley Howard Wakshlag, Kenny Nachwalter, P.A., Miami, F.L., Richard I. Werder, Quinn Emanuel Urquhart Oliver & Hedges, New York, NY, Ryan S. Goldstein, Shon Morgan, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, CA, for Defendants.

*ORDER GRANTING IN PART MOTIONS TO DISMISS [DE 8, 29, 32]; CONVERTING IN PART MOTION TO DISMISS TO MOTION FOR SUMMARY JUDGMENT; SETTING BRIEFING SCHEDULE*

ALAN S. GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant American Suzuki Motor Corpo-

ration's ("American Suzuki") and Defendant Suzuki Motor Corporation's ("Suzuki Japan") Motions to Dismiss [DE 8, 29, 32] and American Suzuki's Motion to Strike Plaintiff's Nationwide Class Allegations [DE 30]. Plaintiff filed responses to the motions [DE 16, 47, 48], and Defendants filed replies [DE 22, 52, 53]. American Suzuki also filed a Request for Judicial Notice [DE 24], to which no responses in opposition were filed. I held oral argument on the motions on March 27, 2009. For the reasons stated below, I convert Defendants' motion to dismiss Plaintiff's Express Warranty (Count II) claim into a motion for summary judgment, and I dismiss the remaining counts in Plaintiff's Complaint [DE 1] without prejudice. I grant American Suzuki's unopposed Request for Judicial Notice [DE 24], and I reserve on American Suzuki's Motion to Strike Plaintiff's Nationwide Class Allegations [DE 30].

## I. *Background*

The facts, as set forth in the Complaint and taken as true for the purposes of a motion to dismiss, are as follows. On March 1, 2006, Plaintiff purchased a 2006 Suzuki GSX R–1000 from Motorsports in Miami, an authorized Suzuki dealer. [Complaint, DE 1, ¶ 19]. Plaintiff was issued a written warranty[1] ("Warranty"), termed a "limited warranty" and stating that "American Suzuki warrants that each vehicle is free from defects in materials and factory workmanship, subject to the following exclusions, obligations and limitations." [Warranty, DE 8–2, p. 4]. If a defect is found, the Warranty provides for repair and replacement parts:

> If an eligible defect is found, the needed repairs will be performed at no charge to you for parts or labor. Warranty repairs may be made at any authorized American Suzuki Motor Corporation motorcycle dealer in the continental United States of America. Any needed parts replacement will be made using new or remanufactured genuine Suzuki parts. If parts for the warranty repair must be ordered, you will not be required to leave your vehicle in the dealer during the order period.

[*Id.*]. Under "Limitations," the Warranty states that the Warranty "does not cover incidental or consequential damage." [*Id.* at p. 5]. Finally, the Warranty states that "Suzuki makes no promises or warranties other than those promises made in these limited warranty." [*Id.* at p. 6].

On May 29, 2006, the frame of Plaintiff's motorcycle broke and fell apart during normal use, while the motorcycle was in motion, directly at the point where the horn hole was drilled into the frame of the motorcycle. [Complaint, DE 1, ¶ 21]. Plaintiff requested that inspection and repair of the frame be conducted by Defendants' representatives, but Plaintiff's requests for repair were refused. [*Id.* at ¶ 22].

Plaintiff Kirk David then brought suit against Defendants American Suzuki Mo-

---

1. Generally, on a motion to dismiss the court is limited to the complaint and exhibits thereto. Here, Plaintiff referenced the written warranty in the Complaint, but did not attach it as an exhibit. Defendant American Suzuki attached the warranty to its Motion to Dismiss [DE 8–2], and I may consider it on a motion to dismiss because it was referenced

in and is central to Plaintiff's Complaint, and its contents are not in dispute. *See Financial Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284–85 (11th Cir.2007) (documents referenced by plaintiff in complaint that are central to claim may be considered if contents not in dispute and defendant attaches document to motion to dismiss).

tor Corporation and Suzuki Motor Corporation, contending that a design flaw in the frame of the 2005 and 2006 model year Suzuki GSX–R1000 motorcycles weakens the frame and, as a result, the motorcycles are prone to coming apart while in operation on the roadway. Specifically, Plaintiff contends that the frame contains a drilled hole for mounting of a horn which "renders the motorcycle's frame susceptible to splitting in two while the motorcycle is being operated." [*Id.* at ¶ 3].

On his own behalf and on behalf of all other persons similarly situated nationwide, Plaintiff asserts seven causes of action: Count I—Implied Warranty of Merchantability; Count II—Express Warranty; Count III—California's Consumer Legal Remedies Act (CLRA); Count IV—California's Business and Professions Code Sections 17200 and 17500 ("Unfair Competition Law" or "UCL"); Count V—California's Song–Beverly Consumer Warranty Act; Count VI—Magnuson–Moss Warranty Improvement Act; and Count VII—Unjust Enrichment. Plaintiff seeks to certify a class of "All individuals within the United States and its territories who have acquired, by lease or purchase, 2005 and/or 2006 model year Suzuki GSX–R1000 motorcycles." [*Id.* at ¶ 25].

## II. *Standard of Review*

On a motion to dismiss, the court accepts a complaint's well-pleaded allegations as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir.2003); *Hoffend v. Villa,* 261 F.3d 1148, 1150 (11th

Cir.2001). Although a plaintiff need not state in detail the facts upon which he bases his claim, Fed.R.Civ.P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In other words, a plaintiffs pleading obligation requires "more than labels and conclusions." *Id.* at 555–56, 127 S.Ct. 1955; *see also Pafumi v. Davidson,* No. 05–61679–CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007). "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir.2007) (citing *Bell Atl.,* 550 U.S. at 556, 127 S.Ct. 1955 (internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have "nudged [its] claims across the line from conceivable to plausible." *Bell Atl.,* 550 U.S. at 570, 127 S.Ct. 1955.

## III. *Analysis*

Before reaching Plaintiff's specific claims for relief, I conduct a limited choice-of-law analysis and discuss standing, both of which affect multiple counts in Plaintiff's Complaint. I then evaluate each of Plaintiff's claims in turn.

### A. *Choice of Law*

 To properly evaluate reach Defendants' Motions to Dismiss, I must determine which state's law applies to Plaintiff's claims.[2] *See, e.g., Brisson v. Ford*

---

2. The parties briefed the choice-of-law issue in conjunction with Defendant's Motion to

Strike Nationwide Class Allegations [DE 30]. Although it is permissible to engage in a

*Motor Co.*, 602 F.Supp.2d 1227 (M.D.Fla. 2009) (conducting choice-of-law analysis before reaching defendant's motion to dismiss). A federal district court sitting in diversity[3] applies the choice-of-law rule of the state in which it is located, in this case Florida. *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir.2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1577 (11th Cir.1990) ("A federal district Court is bound to apply the conflict of laws rules prevailing in the forum state."). As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc. *Grupo Televisa v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240–1241 (11th Cir.2007). Once it has characterized the legal issue, it determines the choice-of-law rule that the forum state applies to that particular type of issue. *Id.* (citing *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983)).

Here, Plaintiff brings both contract and tort-based claims. Plaintiff's implied and express warranty claims (Counts I and II), and corresponding Magnuson–Moss Warranty Improvement Act claim (Count VI) are in the nature of contract. *See Brisson*, 602 F.Supp.2d at 1230 ("An express warranty has long been recognized as 'bargained-for terms of a contractual agreement' and therefore in the nature of a contract."); *Rose v. ADT Sec. Services, Inc.*, 989 So.2d 1244, 1248 (Fla.Dist.Ct. App.2008) ("With regard to the breach of warranty claims, in Florida there are two parallel but independent bodies of products liability law. One, strict liability, is an action in tort; the other, implied warranty, is an action in contract.") (citing *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 88 (Fla.1976)).[4]

 Florida's choice-of-law rule applies the doctrine of *lex loci contractus* to con-

choice-of-law analysis and ascertain the viability of a class from the pleadings, *see John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir.2007) ("The Johns are incorrect insofar as they argue that the district court erred because dismissal of a class allegation on the pleadings is never proper. The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23. Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); *General Telephone Co. Of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."), I acknowledge that a choice-of-law analysis for all potential class plaintiffs is generally conducted at the class

certification, not the motion to dismiss, stage. Therefore, at this juncture, I evaluate choice of law as it pertains to Plaintiff David only.

3. The Complaint states that federal jurisdiction exists pursuant to 28 U.S.C. 1332(d)(2), the diversity statute as it pertains to class actions. [Complaint, DE 1, ¶ 8].

4. The District Court of Appeal in *Rose* continues, "This court recognized in *Cunningham v. General Motors Corp.*, 561 So.2d 656, 658–59 (Fla.Dist.Ct.App.1990), that '[t]he doctrine of strict liability evolved as a vehicle for recovery for personal injury or property damage resulting from use of a product, when, due to lack of privity with the manufacturer, the injured user has no recourse under traditional warranty theory grounded in contract.' However, '[i]f there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains.' *West*, 336 So.2d at 91." Here, as discussed more thoroughly below, Plaintiff David's implied warranty claim fails because he lacks privity with the manufacturer. Nonetheless, in evaluating choice of law,

tract actions and considers where the contract was executed. *U.S. Fidelity,* 550 F.3d at 1033; *State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So.2d 1160, 1163 (Fla. 2006) ("[I]n determining which state's law applies to contracts, we have long adhered to the rule of lex loci contractus."). Because Plaintiff purchased his motorcycle in Florida, under Florida choice-of-law analysis, Florida law applies to these counts as to Plaintiff David. *See Brisson,* 602 F.Supp.2d at 1227 (where complaint failed to allege where plaintiffs purchased their trucks, applying Florida law, rather than Delaware law, to implied and express warranty and MMWA claims, despite Defendant being incorporated and one class member residing in Delaware, as "In a situation in which the facts alleged do not substantiate application of any particular foreign law, the forum generally applies the law of the state in which it sits."); *Bailey v. Monaco Coach Corp.,* 350 F.Supp.2d 1036, 1042 (N.D.Ga.2004) (applying Georgia choice-of-law analysis, which recognizes the rule of *lex loci contractus,* "[plaintiff] negotiated and executed the sales contract, which included the Limited Warranty, in Florida. Thus, Florida's version of the Uniform Commercial Code applies to [plaintiff's] written warranty claim."); *Gilbert v. Monaco Coach Corp.,* 352 F.Supp.2d 1323, 1330 (N.D.Ga. 2004) (applying Georgia choice-of-law analysis, which recognizes the rule of *lex loci contractus* and holding that Arizona law applied to plaintiffs' contract claims because plaintiff negotiated and executed the sales contract and included warranty in Arizona, despite plaintiffs being Georgia residents and taking delivery in Georgia). Indeed, the Complaint pleads breach of implied and express warranty claims under the laws of 49 states, including the District of Columbia, implying that potential class plaintiffs are governed by the law of the state corresponding to their respective state of contract. *See Cohen v. Implant Innovations, Inc.,* No. 07–20777–CIV, 2008 WL 3927223, at *3 (S.D.Fla. Aug.21, 2008) (in class certification phase, "the Magistrate Judge engaged in a conflict-of-laws analysis on the express warranty claim, and concluded that Missouri law should apply to Plaintiffs express warranty claim, but that the law of the state of each putative class member would apply to his or her express warranty claims."). Moreover, as to Plaintiff David, Plaintiff has not offered a choice-of-law analysis to suggest that another state's law applies to Plaintiff's warranty-based claims.[5]

■ A similar analysis applies to Plaintiff's unjust enrichment claim (Count VII), which is also in the nature of contract. *See In re NationsRent Rental Fee Litigation,* No. 06–60924–CIV, 2009 WL 636188, at *10 (S.D.Fla. Feb.24, 2009) ("An unjust enrichment claim is one in the nature of quasi-contract. Florida's choice of law as to contracts is that of *lex loci contractus,* which looks to the place the contract was executed. Accordingly, the law on unjust

---

I must assess Plaintiff's claim as pled. Because Plaintiff pled implied warranty, not strict liability, the choice of law governing contracts applies.

**5.** In his Response to American Suzuki's Motion to Dismiss, Plaintiff states in the context if his implied warranty claim, "Assuming *arguendo* that the Defendant is correct that Florida breach of warranty law applies with respect to Kirk David's claim, ..." and then argues Plaintiff David's claim under Florida law. [DE 16, pp. 27–29]. Plaintiff does not offer a choice-of-law analysis to suggest that another state's laws may govern Plaintiff David's warranty-based claims. Additionally, at oral argument, Plaintiff argued the existence of an implied warranty claim under Florida law.

enrichment of each renter's particular state will be applied in resolving those claims.") (citing *Lanoue v. Rizk,* 987 So.2d 724, 727 (Fla.Dist.Ct.App.2008)). Plaintiff pled unjust enrichment under the laws of 49 states, including the District of Columbia, indicating agreement that potential class plaintiffs are not universally governed by any one state's laws, but rather that each plaintiff is governed by the law of their state of contract, which for Plaintiff David is Florida. Additionally, in his pleadings, Plaintiff applies Florida law to Plaintiff's unjust enrichment claim,[6] and has not provided a choice-of-law analysis to argue that another state's law applies to Plaintiff David's unjust enrichment claim. I therefore conclude that, as with Plaintiff's contract-based implied and express warranty claims, Florida law governs Plaintiff David's unjust enrichment claim.

As discussed below, because I dismiss Plaintiff's California-law based counts—Consumer Legal Remedies Act, Unfair Competition Law and Song–Beverly Consumer Warranty Act (Counts III, IV, and V, respectively)—on alternate grounds, I do not reach a choice-of-law analysis on these counts at this juncture.

### B. *Standing*

■ "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Amnesty Intern., USA v. Battle,* 559 F.3d 1170, 1176 –1177 (11th Cir.2009) (quoting *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1328 n. 4 (11th Cir. 1999)). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Id.* (quoting *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.2005)).[7]

■ The analytical framework for resolving standing issues requires consideration of both "constitutional" and "prudential" requirements for standing. *Young Apartments, Inc. v. Town of Jupiter, FL,* 529 F.3d 1027, 1038 (11th Cir.2008) (citing *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Harris v. Evans,* 20 F.3d 1118, 1121 (11th Cir. 1994) (en banc)). "The constitutional requirements derive from Article III's limitation of federal jurisdiction to situations where a justiciable 'case or controversy' exists between the litigants." *Id.; see also Amnesty,* 559 F.3d at 1177 ("The standing inquiry is an essential and unchanging part of the case-or-controversy requirement of Article III of the United States Constitution." (citation omitted)). To have standing, a plaintiff must establish (1) an injury-in-fact, which is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the

6. In his Response to American Suzuki's Motion to Dismiss, Plaintiff states in the context if his unjust enrichment claim, "It is conceded that under Florida law, no remedy for unjust enrichment lies unless there is an adequate remedy at law ...". [DE 16, p. 34].

7. The parties primarily briefed standing in the context of whether Plaintiff Davis has standing to represent a nationwide class. However, as agreed to by the parties during oral argument, before I reach the question of whether named Plaintiff has standing to represent a class, I must determine whether Plaintiff David has standing to pursue his individual claims. *See Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1307 (11th Cir.2008) ("To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members.").

causal conduct; and (3) a substantial likelihood that a favorable decision will redress the injury. *Id.; Young Apartments*, 529 F.3d at 1038 ("The Eleventh Circuit has explained that to meet the requirements of Article III, the plaintiff must show: (1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling."). "If a plaintiff cannot satisfy these constitutional standing requirements, the case lies outside the authority given to the federal courts by Article III and must be dismissed." *Id.*

In addition to the constitutional requirements of Article III, the Supreme Court has also instructed courts to consider three prudential principles when weighing whether judicial restraint requires the dismissal of a party's claims. *Id.* (citing *Warth*, 422 U.S. at 499–500, 95 S.Ct. 2197, 45 L.Ed.2d 343; *Bischoff v. Osceola County*, 222 F.3d 874, 883 (11th Cir.2000)); *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1162 (11th Cir.2007) ("Even where constitutional standing exists, however, prudential considerations may preclude standing.") (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 n. 12 (11th Cir.2001)). The Eleventh Circuit has summarized these prudential considerations as: (1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; (2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately re-

solved by the legislative branches; and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *Id.* Applying these general standing principles, as well as the choice-of-law principles above, I now turn to each claim.

## C. *Warranty–Based Claims*

### 1. *Express Warranty (Count II)*

I first address Plaintiff's express warranty claim. As explained below, I conclude that, pursuant to the terms of the Warranty, Plaintiff's remedy is limited to repair or replacement parts, and I convert Defendants' motions to dismiss this claim into motions for summary judgment so that I may consider fully the recall issued by Defendants.

 In his Complaint, Plaintiff alleges Defendants breached the express warranty by failing to repair the alleged design flaw in Plaintiff David's motorcycle. Plaintiff seeks as relief "Final injunctive relief compelling the defendant to refund the purchase price of vehicles owned by the plaintiff and the class members or, in the alternative, to replace those vehicles with substantially similar vehicles of merchantable quality." [Complaint, DE 1, p. 19]. Under Florida law, a written warranty is treated as a contract between buyer and seller, *Brennan v. Dow Chem. Co.*, 613 So.2d 131, 132 (Fla.Dist.Ct.App.1993) (noting that a warranty is "a voluntary contractual commitment"), and therefore may, by its terms, limit the remedies available.[8] *Council Bros., Inc. v. Ray Burner Co.*, 473

---

8. During oral argument, Plaintiff agreed that the remedy available under the Warranty is limited by the terms of the warranty. When the Court asked, "[W]ouldn't your remedies here be limited to what's in the warranty?",

Plaintiff's counsel responded, "I think our count asserting express warranty would be limited by the interpretation of the warranty language and the remedies offered therein."

F.2d 400, 406 (5th Cir.1973) [9] (holding that written warranty may limit a remedy to repair or replacement of parts so long as limitation is clearly expressed); Fla. Stat. § 672.316 ("Remedies for breach of warranty can be limited in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy."); Fla. Stat. § 672.719 ("The agreement may provide for remedies ... in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to ... repair and replacement of nonconforming goods or parts."); *cf. Parsons v. Motor Homes of America, Inc.,* 465 So.2d 1285, 1291 (Fla. Dist.Ct.App.1985) (holding plaintiffs were not foreclosed from pursuing UCC remedies outside of written warranty because warranty notice provision did not specify that the remedies provided were exclusive of any other remedy).

■ Here, the Warranty expressly states that Suzuki makes no promises or warranties other than those made in the

Warranty, prescribes a remedy limited to repair or replacement of select parts, and states that it does not cover incidental or consequential damages. As conceded by Plaintiff at oral argument,[10] because the express warranty, by its terms, limits the remedy available to repairs and replacement parts, the remedy available under Plaintiff's express warranty count is limited to repairs or replacement parts.[11] Therefore, if a defect allegedly exists in the frame of the motorcycle, American Suzuki must repair that defect or replace the frame, but is under no obligation to replace the motorcycle in its entirety. To that end, Plaintiff's request for relief that Defendants "refund the purchase price" of Plaintiff's motorcycle or replace the motorcycle is unavailable under the express terms of the written warranty.

■ Notably, Defendants have issued a recall offering to repair or replace damage to the frame. The recall was brought to the Court's attention by Plaintiff in his Response to Defendant Suzuki Japan's Motion to Dismiss [DE 48]. The recall is outside of Plaintiff's Complaint, and I

9. All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

10. Plaintiff agreed that his remedy on the express warranty count is limited to repairs and replacement of parts. During oral argument, upon the Court's question, "Does not the express warranty limit the remedy to repairs ... ?", Plaintiff's counsel stated, "I believe that it limits it to repairs and replacement of parts."

11. Where circumstances cause a limited remedy to fail of its essential purpose, alternative UCC remedies may be available. Fla. Stat. § 672.719; *Griffis v. Leisure Tyme RV, Inc.,* 884 So.2d 241, 243 (Fla.Dist.Ct.App.2004); *see also Pinellas Suncoast Transit Authority v. Mincom, Inc.,* 2007 WL 1222595 (M.D.Fla.

2007) (holding that § 672.316 and § 672.719 stand for the principle that parties to a contract may properly limit the remedies for a breach-of-warranty to repair and replacement when such limitations are reasonable, but noting that the limitation is not valid when the limitation causes the product to fail of its essential purpose). The "essential purposes" exception typically has been limited to circumstances involving repeated (unsuccessful) efforts to repair a product that completely fails in its intended use. *Parsons,* 465 So.2d at 1292. Plaintiff has not alleged that the limited remedy of repair or replacement of parts has caused the motorcycle to fail its essential purpose. Rather, Plaintiff has alleged only that the defect itself has caused the motorcycle to fail its usual uses. [Complaint, DE 1, ¶ 17].

therefore cannot consider it on a motion to dismiss without converting such motion to one for summary judgment. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.2000). Because the recall raises critical jurisdictional issues of standing and mootness, I convert the motion to dismiss of the express warranty count into a motion for summary judgment, and set a discovery and briefing schedule as indicated below.[12]

According to Plaintiff, "on January 21, 2009, [Defendants] sent letters to every single member of the putative class to initiate a recall of the motorcycles for the very same defect asserted in this litigation." [Response to Suzuki Japan's Motion to Dismiss, DE 48, p. 2]. The recall letter, attached as an exhibit to Plaintiff's Response, applies to 2005 and 2006 GSX–R1000 Motorcycles and addresses the motorcycle frame. [Recall Letter, DE 48–3, p. 8]. Specifically, the recall provides that Suzuki dealers will inspect the frame behind and below the steering neck for cracks. [*Id.* at 9]. "If no cracks are found, a frame reinforcement brace will be attached to the frame using bolts and epoxy adhesive". [*Id.*]. If cracks are found, "the frame will be replaced with a new frame that has the reinforcement brace installed." [*Id.*]. Additionally, "[i]f a customer's motorcycle is included in this Safety Recall and they have paid for the repair or replacement of the frame due to cracking or breakage of the frame in the relevant area, they may be eligible for partial or full reimbursement." [*Id.*].

Plaintiff David is facially eligible for the recall (his motorcycle is a 2006 Suzuki GSX R–1000), and the recall recognizes and seeks to address the very frame defect identified in Plaintiff's Complaint.[13] However, Plaintiff has not availed himself of the recall. During oral argument, Plaintiff conceded that, if Plaintiff were to avail himself of the recall, and Defendants were to repair Plaintiff's motorcycle, such facts would undoubtedly be relevant to my analysis of Plaintiff's Article III standing, prudential standing, and, correspondingly, mootness. Plaintiff argued, though, that the analysis depends on whether the repair offered through the recall is adequate to remedy the alleged defect.

To properly evaluate the express warranty claim in the context of the recall, I convert Defendants' motions to dismiss Plaintiff's express warranty claim into motions for summary judgment on such claim. By converting to summary judgment and requesting more information on the recall, I do not suggest a defendant can avoid class action litigation by simply initiating a recall after commencement of a suit. However, in Plaintiff David's case, where the express terms of the warranty limit relief to repair or replacement parts, the alleged defect is the subject of a recall, the recall purports to offer the very remedy available through the warranty, the question of the sufficiency of the recall uniformly affects all members of the class, and no injury is alleged, I conclude that the recall is highly relevant to my analysis of Plaintiff's express warranty claim.

---

12. If the parties present evidence outside of the pleadings, the district court must convert the motion to dismiss into a motion for summary judgment to consider that evidence. *See* Fed.R.Civ.P. 12(b)(6); *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir.1984).

13. Plaintiff agreed to this at oral argument, and also concedes in his Response to Defen-

dant Suzuki Japan's Motion to Dismiss that the Defendants "initiate[d] a recall of the motorcycles for the *very same defect* asserted in this litigation," and the "recall conclusively acknowledges and concedes the existence of the *very defect* which gives rise to the litigation." [DE 48, pp. 2–3 (emphasis added)].

On summary judgment, I will consider facts of the recall as presented by the parties and am particularly interested in whether Plaintiff's claim is rendered moot by the recall, which necessarily implicates the recall's adequacy in addressing the alleged defect. I understand the parties may require limited discovery and, perhaps, expert testimony, to brief the adequacy of the recall and the implications on mootness, and Plaintiff may need to avail himself of the recall. I therefore provide the Defendants until August 31, 2009 to submit a supplemental summary judgment memorandum.[14] Plaintiff would submit a response by September 21, 2009, and Defendants a reply by October 1, 2009. If the parties seek assistance in devising a discovery plan, they may move for a discovery conference in front of Magistrate Judge Chris M. McAliley. Having addressed the express warranty claim, I now turn to Plaintiff's implied warranty claim.

### 2. Implied Warranty (Count I)

■■■■ As discussed above, Florida law controls Plaintiff Davis's implied warranty claim. Florida law requires privity of contract to sustain a breach of implied warranty claim.[15] In *Mesa v. BMW of North America*, 904 So.2d 450 (Fla.Dist. Ct.App.2005),[16] the Florida Court of Appeal stated, "Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Id.* at 458. In that case, plaintiff Mesa leased a car from dealer South Motors and was issued a warranty that ran from warrantor BMW to the first retail purchaser and each subsequent purchaser. The court held that plaintiff Mesa could pursue an express warranty claim against warrantor BMW, but "Mesa cannot maintain suit against BMW for breach of implied warranty as there was no privity of contract between Mesa and BMW." *id.* Similarly, in *Rentas v. DaimlerChrysler Corp.*, 936 So.2d 747 (Fla.Dist.Ct.App. 2006), the court held that purchasers of a used car could pursue a breach of express warranty claim against the manufacturer, who had issued a written warranty, but could not pursue an implied warranty claim because there was no privity of contract. *See also Cerasani v. American Honda Motor Company*, 916 So.2d 843, 846 (Fla.App.2006) (holding that subse-

---

**14.** In converting a 12(b)(6) motion to dismiss into one for summary judgment, the court must give all parties ten-days notice that it is so converting the motion. *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir.1987); *see also* Fed.R.Civ.P. 56(c).

**15.** Plaintiff concedes in his papers that "Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty." [DE 16, p. 27].

**16.** The objective of a federal court sitting in diversity is to determine issues of state law as it believes the Florida Supreme Court would. To that end, the Eleventh Circuit has explained that, "[i]n the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions from Florida's intermediate appellate courts." *State Farm*

*Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir.2004) (citing 17A James Wm. Moore, et al., Moore's Federal Practice § 124.22[3]. 124–87, 124–88). Florida District Courts of Appeal are the law of Florida unless and until overruled by the Florida Supreme Court. *Pardo v. State*, 596 So.2d 665, 666 (Fla.1992). Thus, "[a] federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983) (citations omitted). Only "[i]n the absence of precedents from Florida's intermediate appellate courts ... may [we] consider the case law of other jurisdictions that have examined similar [issues]." *State Farm Fire*, 393 F.3d at 1231.

quent purchaser was entitled to protections of express written warranty but could not assert claim for implied warranty because complaint did not allege privity between purchaser plaintiff and defendant Honda).

■ Like the plaintiffs in *Mesa* and *Rentas*, Plaintiff David did not have privity with Defendants. David purchased his motorcycle from dealer Motorsports in Miami,[17] not from American Suzuki or Suzuki Japan, and the existence of a manufacturer's warranty which runs to the buyer does not in and of itself establish privity. *See Bailey v. Monaco Coach Corp.*, 168 Fed.Appx. 893, 894 (11th Cir. 2006) (affirming district court's dismissal of implied warranty claim because plaintiff lacked privity with defendant manufacturer, "[Plaintiff] purchased the motor home from a dealer and not directly from [defendant]. No privity exists between [plaintiff] and [defendant]."); *Brisson v. Ford Motor Co.*, 602 F.Supp.2d 1227, 1232 (M.D.Fla.2009) ("There is no question that Plaintiffs have failed to allege privity insofar as none of the Plaintiffs purchased their trucks directly from Ford. In fact, some of the class includes individuals who purchased used vehicles from non-Ford dealers and private parties."); *McKissic v. Country Coach, Inc.*, No. 07–1488–CIV, 2008 WL 616093, at *4 (M.D.Fla. March 03, 2008) (dismissing implied warranty and related Magnuson Moss Warranty Act claim against manufacturer because "Plaintiffs did not buy the RV in question from the manufacturer. It was purchased from Dealer, an authorized seller of Manufacturer's RVs. Plaintiffs cannot be in privity with Manufacturer unless they actually purchased the RV from Manufacturer Plaintiffs have alleged no facts that they dealt with Manufacturer during the purchase of this RV."); *Mesa*, 904 So.2d at 452 (dismissing implied warranty claim for lack of privity even though warranty ran to "first retail purchaser, and each subsequent purchaser"). I conclude, therefore, that Plaintiff David has not established privity with Defendants American Suzuki and Suzuki Japan, as required to state a claim for breach of implied warranty under Florida law.

During oral argument, Plaintiff argued for the first time that, pursuant to a line of Florida cases starting with *Hoskins v. Jackson Grain*, 63 So.2d 514 (Fla.1953), a consumer of a product who does not stand in direct privity with the manufacturer may nonetheless be permitted to assert an implied warranty claim against the manufacturer. In *Hoskins v. Jackson Grain*, 63 So.2d 514 (Fla.1953), the Florida Supreme Court noted that there was "a conflict of opinion about the accountability of a manufacturer to a consumer on a theory of implied warranty in the absence of privity." *Id.* at 515. In the case of a farmer who bought seed that was mislabeled from a retailer, the court held that a consumer could bring suit against the manufacturer of the seed on the theory of implied warranty notwithstanding want of privity because "it would be utterly unsound and unfair" to hold that the farmer could not recover against the manufacturer "simply because the farmer got them direct from [a] retailer who know no more about them than he." *Id.*

Subsequently, the Florida Supreme Court restored the privity requirement for an implied warranty claim in *West v. Caterpillar Tractor Company, Inc.*, 336 So.2d 80 (Fla.1976). The *West* court acknowledged that *Hoskins* and other decisions

---

**17.** Motorsports is not a named defendant in this suit.

had, in select situations, eliminated the requirement of privity in an implied warranty claim. Upon certification from the Circuit Court of Appeals, the Florida Supreme Court adopted the doctrine of strict liability in tort (Section 402A of the Restatement) and fundamentally altered the pre-*West* law, including *Hoskins,* on breach of implied warranty. Reconciling strict liability in tort and implied warranty in contract, the *West* court stated,

> The adoption of the doctrine of strict liability in tort does not result in the demise of implied warranty. If a user is injured by a defective product, but the circumstances do not create a contractual relationship with a manufacturer, then the vehicle for recovery could be strict liability in tort. If there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains.

*West,* 336 So.2d at 91. The Florida Supreme Court therefore clarified in *West* that an implied warranty claim requires a contractual relationship, and, in essence, converted the pre-*West* implied warranty claims without privity, such as that in *Hoskins,* into a strict liability claim. As summarized by the Third District Court of Appeal in *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.,* 500 So.2d 688 (Fla.Dist.Ct.App.1987):

> The *West* court fundamentally altered products liability law in Florida by creating a new products liability tort action—strict liability in tort—out of the prior breach of implied warranty cases which had done away with privity of contract. In so doing, *West* necessarily swept away such no-privity, breach of implied warranty cases in favor of the new action of strict liability in tort. Stated differently, the doctrine of strict liability in tort supplants all no-privity,

breach of implied warranty cases, because it was, in effect, created out of these cases. This ground-breaking holding, however, did not result in the demise of the contract action of breach of implied warranty, as that action remains, said the *West* court, where privity of contract is shown.

*Id.* at 692 (holding that breach of implied warranty action "exists solely as a contract remedy which, of necessity, requires a privity of contract showing as an essential element of the action."). The Florida Supreme Court later affirmatively adopted the Third District Court of Appeal's opinion in *Affiliates for Evaluation. Kramer v. Piper Aircraft Corp.,* 520 So.2d 37 (Fla. 1988) ("We, therefore, affirmatively approve and adopt the opinion of the Third District Court of Appeal in *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*"). In sum, Plaintiff David's reliance on *Hoskins* and its progeny to suggest that an implied warranty claim under Florida law does not require privity is incorrect. *See Rees v. Engineered Controls Int'l, Inc.,* No. 06–1558–CIV, 2006 WL 3162834, at *2 (M.D.Fla. Nov.2, 2006) ("Since 1988, Florida law has required privity between the manufacturer of the allegedly defective product and the consumer of such [product] in order for the consumer to assert an implied warranty claim," citing *Kramer v. Piper Aircraft Corp.,* 520 So.2d 37, 39 (Fla.1988)). I therefore dismiss Plaintiff's implied warranty claim as Plaintiff does not have privity with Defendants, as required by Florida law.

### 3. *Magnuson Moss Warranty Act (Count VI)*

The Magnuson–Moss Warranty Improvement Act (MMWA) gives consumers a private right of action against warran-

tors for breach of a warranty, as defined by state law. *See, e.g.,* 15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."); *Bailey v. Monaco Coach Corp.,* 168 Fed.Appx. 893, 894 (11th Cir.2006) ("White the MMWA, (15 U.S.C. § 2301(7)), gives consumers a private right of action against warrantors for breach of implied warranty, implied warranty claims under the MMWA arise out of and are defined by state law."); *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012–14 (D.C.Cir.1986) ("[E]xcept in the specific instances in which Magnuson– Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."). As previously discussed, Plaintiff's implied warranty fails under Florida law. Therefore, a MMWA claim based on breach of implied warranty fails. As to express warranty, because I am converting the motion to dismiss Plaintiff's express warranty claim into one for summary judgment, I reserve ruling on Plaintiff's MMWA claim based on breach of express warranty.

### D. *Unjust Enrichment (Count VII)*

 As previously explained, Plaintiff's unjust enrichment claim sounds in contract and is therefore subject to Florida law. Under Florida law, "The elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Nautica Int'l, Inc. v. Intermarine USA, LP.,* 5

F.Supp.2d 1333, 1341–42 (S.D.Fla.1998). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Id.* It follows that a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract. *Anthony Distributors, Inc. v. Miller Brewing Co.,* 904 F.Supp. 1363, 1368 (M.D.Fla.1995) (dismissing unjust enrichment claim where damages sought were not distinct from damages from alleged breach of contract).

 Here, Plaintiff has failed to plead adequately unjust enrichment. The basis of Plaintiff's unjust enrichment claim is the alleged defect in the frame of the motorcycle, which is also the basis of Plaintiffs breach of express warranty claim. The unjust enrichment claim arises out of Defendants' alleged failure to perform under the warranty, and the damages pled under unjust enrichment are not distinct from those pled under express warranty. Therefore, without determining whether Defendants have breached the express warranty, I conclude that Plaintiff has available a contractual remedy through the breach of express warranty claim. Critically, Plaintiff fails to allege that this contractual remedy is inadequate, as required to state a claim for unjust enrichment. *See Nautica Int'l, Inc.,* 5 F.Supp.2d at 1342 (dismissing unjust enrichment claim because the plaintiff failed to allege that an adequate remedy at law does not exist); *Kraft Co., Inc. v. J & H Marsh & McLennan of Florida, Inc.,* No. 04–2359–CIV, 2006 WL 1876995, at *3 (M.D.Fla.2006) (dismissing unjust enrichment claim because claim arose out of performance of an express contract, and express contract provides legal remedy); *cf. Wilson v. De Angelis,* 156 F.Supp.2d 1335, 1341

(S.D.Fla.2001) (denying motion to dismiss unjust enrichment claim because plaintiff alleged "no adequate legal remedy exists to compensate Plaintiff."). I therefore dismiss Plaintiff's unjust enrichment claim.[18]

### E. Claims Under California Law

Plaintiff David next asserts three claims under California statutes. Plaintiff, a Florida resident who purchased his motorcycle in Florida, argues that California law applies to his claims. As discussed below, because I dismiss Plaintiff's California-law based claims on alternate grounds, I do not conduct a choice-of-law analysis on these claims.

### 1. California's Consumer Legal Remedies Act (CLRA) (Count III)

Plaintiff David seeks relief pursuant to California's Consumer Legal Remedies Act ("CLRA"), which seeks to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection, *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 66 Cal.Rptr.3d 543, 550 (2007) (citing Cal. Civ.Code § 1760), under the theory that Defendants' misrepresentations about the lack of struc-

tural fitness and stability of the motorcycles violated the Act. The CLRA requires a plaintiff to provide notice at least thirty days before commencing an action for damages. Cal. Civ.Code § 1782(a). The notice requirement comports with the intent of the CLRA, which is "to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 124 Cal.Rptr. 852, 858–59 (1975); Cal. Civ.Code § 1760. The CLRA's "clear purpose may only be accomplished by a literal application of the notice provisions." *Outboard Marine*, 124 Cal.Rptr. at 858.

The notice requirement mandates that a plaintiff notify the potential defendant of the particular alleged violation, and demand that the potential defendant correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation. Cal. Civ.Code § 1782(a). The CLRA prescribes, "The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California." *Id.*[19] Compli-

---

**18.** In its Response to American Suzuki's Motion to Dismiss, Plaintiff concedes that, "under Florida law, no remedy for unjust enrichment exists unless there is no adequate remedy at law." [DE 16, p. 34]. Plaintiff then argues that, because American Suzuki contends that an express warranty provides an adequate legal remedy, American Suzuki has admitted that there is privity between American Suzuki and Plaintiff. As discussed in my analysis of Plaintiff's express and implied warranty claim, the existence of an express warranty does not necessarily create the privity required under Florida law for an implied warranty claim. Additionally, irrespective of the adequacy of a legal remedy,

Plaintiff has failed to allege that an adequate remedy at law does not exist.

 Additionally, Defendant Suzuki Japan argued in its Motion to Dismiss [DE 29] that the economic loss doctrine barred Plaintiff's UCL, CLRA, and unjust enrichment claims. In its Response to Suzuki Japan's Motion [DE 48], Plaintiff argued against dismissal of the UCL and CLRA claims on such grounds, but did not address the unjust enrichment claim.

**19.** This notice requirement may be waived for an action for injunctive relief. Cal. Civ.Code § 1782(d) ("Not less than 30 days after the commencement of an action for injunctive

ance with the notice requirement is necessary to state a claim, and failure to comply with the notice requirement necessitates dismissal with prejudice. *Cattie v. Wal–Mart Stores, Inc.,* 504 F.Supp.2d 939, 949–50 (S.D.Cal.2007) ("Here, Plaintiff claimed damages without giving Defendants the statutorily required opportunity for settlement. On the basis of conceded facts, it is clear Plaintiff cannot cure this deficiency by amendment. The Court follows *Laster* and *Von Grabe* in concluding Plaintiff's claim for damages under the CLRA must be dismissed with prejudice."); *see also Laster v. T–Mobile USA, Inc.,* 407 F.Supp.2d 1181, 1194 (S.D.Cal.2005) (dismissing CLRA damages claim with prejudice under Rule 12(b)(6) for failing to comply with notice requirements); *Von Grabe v. Sprint,* 312 F.Supp.2d 1285, 1304 (S.D.Cal.2003) (dismissing premature CLRA claims with prejudice).

Here, Plaintiff does not dispute that he did not comply with the notice requirements of the CLRA. Plaintiff pleads that Defendants "have learned of [frame] failures" [DE 1, ¶ 13], Defendants had "actual constructive notice of the problem" [DE 1, ¶ 14], and Plaintiff requested inspection and repair be performed by Defendants' representatives [DE 1, ¶ 22]. But Plaintiff does not plead notice as required by the CLRA. During oral argument, Plaintiff conceded that notice in the form of a certified letter was never sent prior to commencing suit. Although I am inclined to follow the California courts' decisions in Cattie, Lester, and *Von Grabe* and dismiss Plaintiff's CLRA claim with prejudice, because Plaintiff suggested that he believes he can cure his CLRA claim by repleading as a latent defect, I will allow Plaintiff leave to amend.[20]

### 2. *California's Unfair Competition Law (Count IV)*

 Plaintiff David next asserts a claim against Defendants pursuant to California's Business and Professions Code Sections 17200 and 17500, or California's unfair competition law ("UCL"). Section 17200 of the California UCL provides a

---

relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages."). While Plaintiff characterizes his request as "injunctive relief compelling the defendant to refund the purchase price," (DE 1, p. 22), Plaintiff's request is really one for monetary damages in the amount of the purchase price, and is therefore subject to the notice requirement.

**20.** Through this Order, I have converted Defendants' motion to dismiss Plaintiff's express warranty claim into a motion for summary judgment to address the recall. Under Cal. Civ.Code § 1782(c), Plaintiff's claim may be barred by the recall. Cal. Civ.Code § 1782(c) states:

No action for damages may be maintained under Section 1781 upon a showing by a person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 that all of the following exist: (1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made; (2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services; (3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given; (4) The person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, the person will, within a reasonable time, cease to engage, in the methods, act, or practices.

The parties have not briefed the issue, but if the recall satisfies the requirements of § 1782(c), it appears Plaintiff would be precluded from seeking damages under the CLRA.

remedy for any injuries resulting from unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof.Code § 17200, and Section 17500 provides a remedy for false advertising. Cal. Bus. & Prof.Code § 17500. In his Complaint, Plaintiff alleges that Defendants' marketing related to the 2005 and 2006 GSX R–1000 motorcycle was fraudulent, misleading, untrue, and unlawful. While Plaintiff alleges that Defendant American Suzuki is a California corporation [DE 1, ¶ 5], and that California is the "state of defendant's primary place of business" [DE 1, ¶¶ 32, 44],[21] Plaintiff does not allege that the marketing campaign was devised, implemented, and directed from the State of California, nor does Plaintiff allege that the unfair conduct occurred in California. Because Plaintiff has not alleged unfair conduct or corresponding injury occurring in California, Plaintiff, a Florida resident who purchased his motorcycle in Florida, has failed to state a claim under the California UCL. *Cf. State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.,* 420 F.Supp.2d 1288, 1311 (S.D.Fla.2005) (denying motion to dismiss California UCL claim where complaint alleged that defendant "devised, implemented, and directed the scheme that is the subject of the Complaints at its executive headquarters in Santa Barbara, California" and that defendant "received the ill-gotten gains from its outlier overcharge scheme in California," stating, "Because Boca has alleged that it was harmed by wrongful conduct occurring in California, Boca may assert a claim under the UCL."); *see also TruePosition Inc. v. Andrew Corp.,* 507 F.Supp.2d 447, 467 (granting plaintiff's motion for summary judgment on defendant's UCL coun-

terclaim because there was no showing that the alleged misconduct took place in California). I therefore dismiss Plaintiff's UCL claim.

### 3. *Song–Beverly Consumer Warranty Act (Count V)*

█ I finally turn to Plaintiff's claim for relief under the Song–Beverly Consumer Warranty Act. The Song–Beverly Act applies only to consumers who took title to the goods in California. Cal. Civ. Code § 1792 ("Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail *in this state* shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." (emphasis added)); *Barabino v. Dan Gamel, Inc.,* No. 04–2359–CIV, 2006 WL 2083257, at *3 (E.D.Cal. July 25, 2006) ("California law is clear that where title passes outside of California, the Song–Beverly Act does not apply.") (citing *Cummins, Inc. v. Superior Ct.,* 36 Cal.4th 478, 30 Cal.Rptr.3d 823, 115 P.3d 98, (2005)). Plaintiff does not dispute this requirement, but argues that some class members may have taken title to their motorcycle in California. As discussed with and agreed to by the parties at oral argument, before reaching the claims of the nationwide class, I must determine whether Plaintiff David can state a claim. Plaintiff admits that he took title to his motorcycle in Miami [Complaint, DE 1, ¶ 19]. Because Plaintiff did not take title in California, Plaintiffs claim for relief under California's Song–Beverly Consumer Act fails.

### IV. *Conclusion*

For the reasons stated above, I convert Defendants' motions to dismiss Plaintiff's

---

**21.** Plaintiff alleges that California is Defendants' primary place of business in the Implied Warranty and Express Warranty counts, not in the UCL count.

breach of express warranty claim into a motion for summary judgment, and reserve on Plaintiff's Magnuson Moss Warranty Claim as it pertains to breach of express warranty. While I am inclined to dismiss many of the remaining claims with prejudice, I permit Plaintiff leave to amend to attempt to cure the pleading defects addressed in this Order. Additionally, because discovery about the recall and the summary judgment briefing may affect claims other than the express warranty claim, the parties may include in their summary judgment briefs arguments as to why the recall bars those claims. To that end, Plaintiff may file his amended complaint after the Court has rendered its decision on summary judgment. Accordingly, it is hereby

ORDERED AND ADJUDGED:

1. Defendant American Suzuki Motor Corporation's and Defendant Suzuki Motor Corporation's Motions to Dismiss [DE 8, 29, 32] are GRANTED in PART.

2. Counts I (Implied Warranty of Merchantability), III (California's Consumer Legal Remedies Act), IV (California's Business and Professions Code Sections 17200 and 17500), V (California's Song–Beverly Consumer Warranty Act), and VII (Unjust Enrichment) of Plaintiff's Complaint [DE 1] are DISMISSED WITHOUT PREJUDICE.

3. The parties are hereby put on notice that Defendants' Motions to Dismiss Count II (Express Warranty) will be converted into Motions for Summary Judgment. The parties are therefore instructed to prepare affidavits and engage in discovery necessary to properly plead and respond to Motions for Summary Judgment.

4. Defendants shall file a supplement to their Motions or amended Motion(s) for Summary Judgment by August 31, 2009.

5. Plaintiff shall file a response to the Motion(s) for Summary Judgment by September 21, 2009.

6. Defendants shall file a reply to Plaintiff's response(s) by October 1, 2009.

7. Plaintiff may file an amended complaint after the Court's ruling on the Motion(s) for Summary Judgment, at which point the Court will provide further clarification on which counts may be amended, and which may be dismissed with prejudice.

8. American Suzuki's unopposed Request for Judicial Notice [DE 24] is GRANTED.

9. I reserve on American Suzuki's Motion to Strike Plaintiff's Nationwide Class Allegations [DE 30].